IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 05-162L<br>Judge Mary Ellen Coster Williams |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff moves this Court for summary judgment in his favor. As the attached statement of undisputed material facts set forth in the affidavit of plaintiff's corporation president, Dalton Wilson, accompanied by supporting evidence, shows, defendant, without due process of law, wrongfully entered plaintiff's certificated water source, fenced it off, and destroyed plaintiff's diversion structure. The diversion structure was intended by plaintiff to be used for irrigation and livestock watering purposes. It had been in use for at least 17 years prior the passage of the Taylor Grazing Act of 1934 and at least 10 years after the Act thereby preexisting the passage of the Federal Land Policy and Management Act. The well established law of both the Taylor Grazing Act and FLPMA makes it perfectly clear that any right which had been established prior to the passage of these acts was to be respected and was to be unaffected by the passage of these acts. The destruction of the diversion structure and the barricading of access to the water source in the year, 2000, has resulted in loss of income to the plaintiff in excess of $300,000.00.

Rulings on both the liability issue and the damage issue are sought in this Motion For Summary Judgment.

Respectfully submitted this 31 day of March, 2006.

MARTIN G. CROWLEY
American Legal Services
Attorney for Plaintiff

# STATEMENT OF UNDISPUTED FACTS

## UNDISPUTED FACT NUMBER 1

Plaintiff is a duly licensed Nevada corporation under the ownership of Dalton Wilson

SUPPORTING EVIDENCE

**(EXHIBIT "A")**

A. Page 1 of Affidavit of Dalton Wilson.

B. Articles of Incorporation

## UNDISPUTED FACT NUMBER 2

On October 1, 1917, Thomas Brackney made application to the Nevada State Engineer for a permit for water for irrigation and stock watering on 160 acres.

SUPPORTING EVIDENCE

**(EXHIBIT "B")**

A. Amended application for Water Permit

B. Certificate No. 1656 by State Engineer

## UNDISPUTED FACT NUMBER 3

In each subsequent sale and transfer of the 80 acres since the issuance of water certificate 1656 the water right was included in each land transfer or sale.

SUPPORTING EVIDENCE

**(EXHIBIT "C")**

A. Certified copies of Deeds including the water rights listed in Certificate 1656.

## UNDISPUTED FACT NUMBER 4

On March 1, 1924, President Coolidge issued letters of patent for the 80 acres described above and, in such letters, granted forever, "the right to any vested and accrued water rights and rights to ditches and reservoirs used in connection with such water rights..."

SUPPORTING EVIDENCE

**(EXHIBIT "D")**

A. Copy of Letters of Patent dated March 1, 1924 for the 80 acres described herein.

## UNDISPUTED FACT NUMBER 5

The patent described in Undisputed Fact Number 4 was issued to Tom Brackney pursuant to the Homestead Act of 1862 for 80 acres in the Underwood and Wood Canyons area of Grass Valley in Lander County, Nevada.

SUPPORTING EVIDENCE

**(EXHIBIT "E")**

A. Copy of Letters of Patent dated March 1, 1924 for the 80 acres described herein.

## UNDISPUTED FACT NUMBER 6

Since 1862 the property described in Undisputed Fact Number 4 has been sold numerous times and, in each sale,

SUPPORTING EVIDENCE

**(EXHIBIT "F")**

A. Certified copies of the Chain of Title showing that

the patent and certificated water rights have remained in full force and effect up to and including the present owner.

each successive sale of the included the water rights.

UNDISPUTED FACT NUMBER 7

On February 25, 2000, (7 months before the BLM removed the diversion structure which had been in place since Thomas Brackney acquired the patent and water rights) Dalton Wilson sent a letter to Gerald Smith informing Mr. Smith that Mr. Wilson had simply maintained and reconstructed the diversion structure in accordance with the patent and certificated water rights and that, based upon the patent and the water rights preexisting the passage of Taylor Grazing and FLPMA, no authorization from the BLM was required to maintain the diversion structure for the purpose of irrigation, stock watering and domestic use.

SUPPORTING EVIDENCE
**(EXHIBIT "G")**

A. Copy of letter sent by Dalton Wilson, dated February 25, 2000.
B. Copy of Approval of State Engineer to the Amended Application for a permit for a C certificate of Appropriation of Water dated February 25, 1919.

UNDISPUTED FACT NUMBER 8

On September 25, 2000, BLM employees destroyed and removed the diversion structure and presented Dalton Wilson and Don Bowman with a statement of charges in the amount of $27,900.64 for the costs of investigation and removal.

SUPPORTING EVIDENCE
**(EXHIBIT "H")**

A. Declaration of BLM Agent, Gail Givens for U.S. District Court detailing all removal work and costs of removal.

UNDISPUTED FACT NUMBER 9

Following the removal of the diversion structure, the defendant constructed a fence around the area on which the diversion structure had been erected and maintained thereby preventing plaintiff from any access to the point of diversion. The fence remains in place at the time of the filing of this motion.

SUPPORTING EVIDENCE
**(EXHIBIT "I")**

A. Affidavit of Dalton Wilson.
B. Colored photographs

UNDISPUTED FACT NUMBER 10

Following the removal of the diversion structure, the defendant barricaded access to the certificated water source thereby preventing plaintiff from any access to the water source listed in Certificate 1656.

SUPPORTING EVIDENCE
**(EXHIBIT "J")**

A. Affidavit of Dalton Wilson.

UNDISPUTED FACT NUMBER 11

On August 13, 1999, the Office of the Solicitor General sent a letter to the defendant stating that plaintiff had a valid and legal water right and a legal claim to the location of the water source and to the point of diversion.

SUPPORTING EVIDENCE
**(EXHIBIT "K")**

A. Copy of letter dated August 13, 1999 from the Office of the Solicitor General to the BLM.

UNDISPUTED FACT NUMBER 12

Because of the taking of the water source and the point of diversion and the destruction of the diversion structure, plaintiff lost at least the sum of $300,000.00 from the issuance of the Cease and Desist Order and the destruction of the diversion structure from the loss of the ability to irrigate for hay raising and stock watering.

SUPPORTING EVIDENCE
**(EXHIBIT "L")**

A. Affidavit of Dalton Wilson.
B. Nevada Agricultural Stat-statistics published by the Nevada Department of Agriculture
C. Copy of the Application of Underwood Livestock, Inc. to CDC for a loan to raise livestock in 2005.

Dated: March 31, 2006.

Martin G. Crowley
American Legal Services
85 South La Verne Street
Fallon, Nevada 89406
(775) 423-7088 (phone)
(775) 423-7089 (fax)

Attorney for Plaintiff, Underwood Livestock, Inc.