**EXHIBIT "A"**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | ) ) ) ) ) ) ) ) ) ) | No. 05-162L<br>Judge Mary Ellen Coster Williams |

**AFFIDAVIT OF DALTON WILSON**

Pursuant to 28 U.S.C. Sec. 1746, under penalty of perjury, I, Dalton Wilson declare as follows:

1. I, Dalton Wilson am the sole owner of Underwood Livestock, Inc. which is a duly licensed Nevada Corporation in good standing with the Secretary of State for the State of Nevada. The Articles of Incorporation are attached to this affidavit as part of Exhibit "A."

2. That, on September 22, 2002, I executed a "Declaration of Dalton Wilson" which was submitted to the United States District Court For The District of Nevada in case number CV-N-00-0506- HDM which was entitled Don Bowman and Dalton Wilson v. Bruce Babbit, BLM, et. al. and which declaration is attached to this affidavit. Said declaration was signed under penalty of perjury and notarized. Said declaration is incorporated by reference herein in support of the within Plaintiff's Motion For Summary Judgment inasmuch as it, not only supports almost every "Undisputed Fact" alleged in the motion, but provides a detailed summary of the history of the acquisition of the water source and diversion structure which are the subject of the within case before this Honorable Court of Federal Claims.

3. That as to "Undisputed Fact Number 1" in the within Motion for Summary Judg-

ment, Underwood Livestock, Inc. is a duly licensed Nevada Corporation in good Standing and is soley owned by me.

4. That as to "Undisputed Fact Number 9" in the within Motion for Summary Judgment the colored photographs attached to this affidavit represent the fence which the defendant, BLM, constructed around around the area in which the diversion structure was located both by Thomas Brackney and which was reconstructed by myself. The fence does not include any type of gateway for cattle and equipment to pass through to access the point of diversion.

5. That as to "Undisputed Fact Number 10" the BLM employees constructed a rock barricade which blocks the cherry stem vehicle acces to the water source which is the subject of within action. That said rock blockade is still located at the location where the BLM and its employees originally constructed it following the removal of the diversion structure.

6. That, as to "Undisputed Fact Number 12," based upon my experience in the livestock raising industry in the State of Nevada for over 30 years I am familiar with the publication, Nevada Agricultural Statistics, an annual publication of the Nevada Division of Agriculture, which, in part, establishes the market analysis of all yearly average values for livestock and agricultural products. That the 2000-2004 publication reveal that the value of hay for a herd of 200 cows or 1200 ewes and the income these types of livestock would produce per year. I then multiplied that yearly amont by the six year period of time which I have been barred from the use of the theer. Relying upon the average yearly sales values of calves for the past six years at $1.40/lb for a 45/lb -475/lb calve I can honestly state that the sum of $300,000.00 of lost earnings is a very conserative figure.

7. That, as to "Undisputed Fact Number 12," I, in 2004 applied to the Eureka County Community Development Corporation for a business loan to begin raising sheep. A true copy of the loan application is attached to this affidavit and which said application further supports the within claim for reasonable damages.

DATED: This 26th day of March 2006.

Dalton Wilson

DALTON WILSON, President
Underwood Livestock, Inc.

MICHAEL F. MACKEDON
State Bar No. 2388
MACKEDON, McCORMICK & KING
A Professional Corporation
179 S. LaVerne Street
P.O. Box 1203
Fallon, Nevada 89407
775-423-2106

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| DON BOWMAN and DALTON WILSON<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE BABBITT, in his official Capacity as the Secretary of Interior; BUREAU OF LAND MANAGEMENT; GERALD M. SMITH, In his official capacity as Field Manager of the Battle Mountain Field Office,<br><br>Defendants. | CV-N-00-0506-HDM-RAM |

**DECLARATION OF DALTON WILSON**

Pursuant to 28 U.S.C. § 1746, and under pain and penalty of perjury, I Dalton Wilson declare as follows:

1. I am Dalton Wilson one of the above-named Plaintiffs I joined with Don Bowman in bringing the present action to secure title and determine my right to the ownership of a



MACKEDON, McCORMICK & KING
A Professional Corporation
179 So LaVerne Street
P.O. Box 1203
Fallon, NV 89407-1203

certain Nevada water right and a certain right of way across public lands managed by the United States Department of Interior, Bureau of Land Management ("BLM") which I believe are appurtenant to the deeded farm land which I own in Lander County and which are valid existing rights which vested and accrued and which existed prior to the enactment of the Federal Land Management Policy Act ("FLMPA") in October 1976.

2. I purchased 160 acres of deeded land located in Eureka County and Lander County in 1980 from Don Smith and his wife Wilma.

3. I paid the Smith's $85,000.00 for the property. I paid $10,000.00 down when title passed and I paid $75,000.00 cash one year later.

4. Eighty (80) acres of the land I purchased is located high in Underwood Canyon consisting of two (2) separate 40 acre parcels which are non-irrigable and not a part of this action.

5. The lower eighty (80) acres is located below the mouth of Underwood Canyon and has been a farmstead since 1917.

6. The lower 80 acre farmstead has an appurtenant Nevada water right being water right Certificate 1656.

7. The application to appropriate water was filed June 1, 1917 and that is its priority date.

ACKEDON, McCORMICK & KING
Professional Corporation
179 So. LaVerne Street
P.O. Box 1203

8. Certificate 1656 was issued June 17, 1930 after the appropriator, who at that time was Tom Brackney, had completed all the works of diversion called for in the permit, and provided proof of completion and proof of beneficial use.

9. When I purchased the land the irrigation system that had been installed by Tom Brackney was not functioning. I purchased the land and paid the price I did with the intention of putting the water system back into use so that I could beneficially use the water appropriated by Certificate 1656.

10. The works of diversion I found in place when I first looked at the ranch and which existed in 1980 when I purchased included and are described as follows:

a. a spring box and short pipeline at Underwood Spring that was in disrepair and was clearly installed to improve water development at the spring and discharge the flow of the spring into the natural channel in the floor of Underwood Canyon.

b. An earthen diversion dam located in the natural channel in the floor of the Underwood Canyon with a headgate and weir approximately 1/4 of a mile down channel from the spring box. The dam consisted of a wing on either side with an opening framed by a headgate approximately 5′6″ in width according to my actual measurements. The weir consisted of

ACKEDON, McCORMICK & KING
Professional Corporation
179 So. LaVerne Street
P.O. Box 1203

two (2) flash boards and in the center of each flash board there had been a 3" semi-circle cut and a length of 6" galvanized pipe was fitted into the flash boards.

c. From the diversion structure a 6" galvanized pipe extended and continued outside the natural channel along a suitable gradient down Underwood Canyon for a mile and a half or so to a point something less than a quarter of a mile from the farmstead which was the place of use for the water.

d. There was a ditch from the point where the pipe terminated to the farm which is the place of use. The pipe had been buried but there were places were it was exposed and places were it was broken and needed repair or replacement.

11. I believed then and I believe now that the spring box in Underwood Canyon is the point of diversion described and depicted on the culture map which is Exhibit F to Defendants' Motion and the only location described on the map that is described by bearing and distance.

12. I believed then and I believe now that this earthen dam and weir which did not impound water but served as a point and place to divert water into the pipeline from the earthen dam and weir is the structure referred to in the Engineer's permit as the structure required by the permit to accommodate



JACKEDON, McCORMICK & KING
Professional Corporation
179 So. LaVerne Street

measurement of the water used under the permit as it entered the pipeline.

13. After I purchased the ranch I went to work developing the farmstead. I built a 20′ x 100′ metal barn in 1981. I moved a 10′ x 50′ mobile home onto the farm so that I had a place to live.

14. I cleared the brush from the water righted land in 1981. I began working on a domestic water system to divert water from Twin Springs under a separate water certificate and completed that work in 1983. In 1981 I allowed a friend named Gary Sprouse, doing business as S & H ranches, to use my land and appurtenant water rights appropriated under Certificate 1656 to secure an operating loan for his benefit with the Federal Land Bank of Sacramento.

15. Between 1983 and 1987 I developed the idea that a more reliable water supply could be developed under water right Certificate 1656 if I acquired an additional point of diversion from a point up canyon from Underwood Spring at a spring located on one of the 40 acres deeded parcels I owned. I believed this plan would change and enlarge upon the preexisting right of way that Brackney acquired as an appurtenancy to water right Certificate 1656 so I made application with the BLM for what I was told was a Title 5

ACKEDON, McCORMICK & KING
Professional Corporation
179 So. LaVerne Street

permit under FLMPA. I made this application in May of 1987 and under the application a separate pipeline would have been installed between Underwood Canyon and the upper spring and the road would have been extended 3/4 of a mile up canyon.

16. BLM representatives, upon receiving the application for the Title 5 permit, questioned the validity of the water right and my ownership of the right and indicated that the Title 5 permit could not be granted if the water right was not valid or I did not own it. The BLM representatives wrote to the Nevada State Engineer and I believe were advised that Certificate 1656 was an active valid water right but that the title had not been properly transferred in the State Engineer's office for 40 years so I perfected the record to the satisfaction of the State Engineer and the BLM and the State Engineer's record showed that Certificate 1656 was properly conveyed to me on May 8, 1998.

17. The BLM completed their analysis of my Title 5 application at the end of August, 1988. On October 3, 1988 the BLM offered the Title 5 permit to me and in March of 1989 I accepted and it was issued to me.

18. From the time I made application for a Title 5 permit until the permit was granted in March of 1989 representatives of the BLM visited the canyon for the purpose



KEDON, McCORMICK & KING
Professional Corporation
So. LaVerne Street
P.O. Box 1203
on, NV 89407-1203
(775) 423-2106

of their analysis and all of the old irrigation system that I have described was in place as I have described it here, including the old diversion dam and weir, although due to a wash out in 1985, the diversion dam was more degraded than when I purchased the ranch. I accompanied BLM representatives on numerous occasions when they visited Underwood Canyon for the purposes of establishing permit conditions or authorizing the permit.

19. On November 23, 1987 I accompanied Carol Kershaw, Mary O'Brien, John Menten and two BLM employees from the Reno office whose names I cannot remember but whose names are in the working documents compiled by John Menten at the Battle Mountain district office on a site study visit to Underwood Canyon.

20. On November 23, 1987, I, in the company of those people, discussed the location of the old diversion structure and weir where the old pipeline commenced and diverted water. I stated, and I believe it was understood, that the old diversion structure would be repaired and it would continue to be used as a part of the new irrigation system and, in any case, the existence of the old diversion structure and its location was known and observed by all of us.

KEDON, McCORMICK & KING, ofessional Corporation ' So. LaVerne Street P.O. Box 1203 ilon, NV 89407-1203 (775) 423-2106

21. During the time I was working on my Title 5 application my friend Sprouse's lender commenced foreclosure because Sprouse was in default of the loan which, of course, put my ownership in jeopardy.

22. My land and the water right appropriated by Certificate 1656 were foreclosed upon in September 1989 and acquired by Western Farm Credit Bank (successor to Federal Land Bank of Sacramento) by virtue of a credit bid of $72,000.00.

23. Don Bowman purchased the ranch and the appurtenant water right from the bank in 1994 and then entered into a lease option agreement with me so that I would have the opportunity to reacquire my ranch.

24. I believe and believed that the Title 5 permit was not transferable. I paid the fees for the first 5 years but I did not continue paying because I had lost the ground and the water right.

25. After I reacquired the right to my ranch and the water right through the lease purchase agreement with Don Bowman, I re-examined the plans I had developed when I made the Title 5 application. I determined that I would not develop more water or a more reliable water supply by adding an additional point of diversion and pipeline up stream from



KEDON, McCORMICK & KING
ofessional Corporation
So. LaVerne Street
P.O. Box 1203
llon, NV 89407-1203
(775) 423-2106

Underwood Spring so I began making preparations to reconstruct the old irrigation system according to its original dimensions and alignment.

26. In the spring of 1998 I made arrangements to buy used irrigation pipe from farmers in Diamond Valley in Eureka County. In April of 1998 over a period of about 20 days of intermittent work I constructed a diversion structure in the channel of Underwood Canyon at a point 15′ to 30′ below the original Brackney dam. I built an earth and rock structure reinforced by 19 truck tires which had an overall length of 42′. Although because the wings were set at an approximate 45° angle the width from wing to wing was approximately 32′. The structure I built was no larger than the original earthen dam (not longer, not wider, not higher) and the headframe and weir were to be the same dimension when completed as the original structure as I had measured it.

27. Portions of the original earthen dam can still be seen today and some of the headframes and boards are still there as are pieces of the original pipeline.

28. I did not seek BLM authorization to build this structure because I believed then and I believe now that so long as I did not change the use or alignment or enlarge upon the right that I was entitled to beneficially use the right of



KEDON, McCORMICK & KING
ofessional Corporation
So. LaVerne Street
P O. Box 1203
llon. NV 89407-1203
(775) 423-2106

way for the purpose it was intended and could make all necessary repairs or reconstruction.

29. I believe that the BLM learned of the existence of the new dam sometime before June 15, 1998 because BLM representatives visited the site on that date and I met them at the gate to my property when they were leaving and discussed the matter with them.

30. After June 15, 1998 BLM representatives again questioned the validity of the water right and wrote to the State Engineer who confirmed again that their office considered it an active valid right but that the State's record of conveyance showed the title in Western Farm Credit. So once again application was made to show conveyance from Western Farm Credit to Don Bowman at the time to keep the State Engineer's records current. The State Engineer has not completed the process and updated its records to my knowledge.

31. BLM and I exchanged comments and letters from June of 1998 until February 2000 which are all a part of the file claiming that for various reasons that seem to me to change over time that the dam was an unauthorized use and I was in trespass.

32. BLM representatives issued a trespass decision on April 10, 2000. On September 29, 2000 BLM representatives and



KEDON, McCORMICK & KING
ofessional Corporation
So. LaVerne Street
P.O. Box 1203
lon, NV 89407-1203
(775) 423-2106

crews arrived in Underwood Canyon and removed the dam. At the time the dam was removed by the BLM it had been completely overgrown by native vegetation and the structure was less visible than the earthen dam.

33. BLM representatives thereafter petitioned the State Engineer to cause the cancellation of the water right as being forfeited or abandoned as a matter of law. I was not made aware that a petition had been filed at the time it was filed and was not served with a copy. The State Engineer responded to the petition by an order which stated the law of the matter and established that the water right was and is a valid existing right.

34. Before removing the dam, the BLM notified the State Engineer that the dam had been constructed and questioned its legality and I was required to submit documentation to the State Engineer to establish the kind of structure and the location of the structure including the material that was used in construction and the State Engineer had no further objection to it or to its location. I believed and believe that the original application requires that such a diversion structure be installed with a weir at the head of the pipeline so that the water used can be measured at the point were water is received into the pipeline.



KEDON. McCORMICK & KING
Professional Corporation
So. LaVerne Street
P.O. Box 1203
on. NV 89407-1203
(775) 423-2106

35. I did not know nor do I now believe that any part of the irrigation system that Brackney constructed to appropriate water under Certificate 1656 lies within a Wilderness Study Area ("WSA"). I understood that the WSA boundaries were to be drawn (as a matter of policy and were in fact drawn) to exclude the roadway up Underwood Canyon and the entire irrigation system that was constructed by Brackney and which was visible and in place when the WSA boundary was drawn.

36. I accompanied a BLM representative by the name of Al Voss in September of 1983 and participated with him in establishing what I thought would be and became the WSA boundary for Wood Canyon, Twin Springs and Underwood Canyon.

37. At that time Mr. Voss had a large scale map and in my presence and with my participation he drew lines on that map for Wood Canyon, Twin Springs and Underwood Canyon. The line was drawn for Wood Canyon to exclude the road, or "cherry stem" the road as I understood it at the time. The line was extended North to exclude Twin Springs which I developed with BLM's knowledge and approval in 1983 for a domestic water supply which included 1300' of pipeline all of which is on public land. The line continued North to Underwood Canyon and according to Voss's drawing and his stated intentions at the time it excluded the pipeline, the diversion structure, the

SCHROEDER, McCORMICK & KING
A Professional Corporation
So. LaVerne Street
P.O. Box 1203
Fallon, NV 89407-1203
(775) 423-2106

point of diversion at Underwood Spring and the roads in Underwood Canyon ("cherry stemmed").

38. I have not found what I will call the "Voss map" in the BLM files but I did see the map in the fall of 1999. A BLM employee - Walt Brown - had the "Voss map" with him in my presence and I believe was relying on it when the BLM was at Wood Canyon for the purpose of establishing the approximate location of the WSA boundary before commencing fire reclamation work there.

DATED: This 26th day of September, 2002.

Dalton Wilson
DALTON WILSON

STATE OF NEVADA )
:ss.
County of Churchill )

DALTON WILSON being first duly sworn according to law, deposes and says:

That he is the declarent herein and that the foregoing declaration is his own; and that he knows the contents thereof

KEDON, McCORMICK & KING
Professional Corporation
So. LaVerne Street
P.O. Box 1203
lon, NV 89407-1203
(775) 423-2106

and that the declarations made are of his own knowledge except for those matters therein stated on belief and as to those matters he is informed and believes them to be true.

[signature]
DALTON WILSON

STATE OF NEVADA )
: ss.
County of Churchill )

On this 26th day of September, 2002, personally appeared before me, a Notary Public, in and for the county and state aforesaid, DALTON WILSON, known to me or who proved to me to be the person, described in and who executed the above and foregoing instrument; who acknowledged to me that he executed the same freely and voluntarily and for the uses and purposes therein mentioned.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above-written.

MARY PAT CHURCH
Notary Public - State of Nevada
Appointment Recorded in County of Churchill
My Appointment Expires Jan. 11, 2004
00-60139-4

[signature]
Notary Public

KEDON, McCORMICK & KING
Professional Corporation
So. LaVerne Street
P.O. Box 1203
on, NV 89407-1203
(775) 423-2106

CERTIFICATE

# State of Nevada — Secretary of State

I, FRANKIE SUE DEL PAPA, Secretary of State of the State of Nevada, do hereby certify that UNDERWOOD LIVESTOCK, INC. did on the TWENTY-NINTH day of DECEMBER, 19 89, file in this office the original Articles of Incorporation; that said Articles are now on file and of record in the office of the Secretary of State of the State of Nevada, and further, that said Articles contain all the provisions required by the law of said State of Nevada.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office in Carson City, Nevada, this TWENTY-NINTH day of DECEMBER, A. D. 19 89

Frankie Sue Del Papa
Secretary of State

By [illegible]
Deputy

Form DC-2 (Rev. 10-88)

SECRETARY OF STATE OF THE
STATE OF NEVADA

DEC 29 1989

SUE DEL PAPA SECRETARY OF STATE
Frankie Sue Del Papa
11268-89

# ARTICLES OF INCORPORATION

OF

# UNDERWOOD LIVESTOCK, INC.

KNOW ALL MEN BY THESE PRESENTS:

I, the undersigned, being the original incorporator herein named, for the purpose of forming a corporation to do business both within and without the State of Nevada, and in pursuance of the corporation laws of the State of Nevada, being Chapter 78 of the Nevada Revised Statutes, do make and file these Articles of Incorporation hereby declaring and certifying that the facts herein stated are true:

FIRST: The name of this Corporation is: UNDERWOOD LIVESTOCK, INC.

SECOND: The Corporation is to have perpetual existence.

THIRD: Its principal office in the State of Nevada is located at 959 West Williams Avenue, Fallon, Nevada 89406. The name and address of its Resident Agent is JAMES F. SLOAN, ESQ., Attorney at Law, 959 West Williams Avenue, Fallon, Nevada 89406.

The corporation may also maintain offices at such other places within or without the State of Nevada as it may from time to time determine. Corporate business of every kind and nature may be conducted, and meetings of directors and shareholders may be held outside the State of Nevada with the same effect as if in the State of Nevada.

FOURTH: The purpose for which the Corporation is

judgments, fines and amounts paid or to be paid in settlement) reasonably incurred or suffered by him in connection therewith. Such right of indemnification shall be a contract right which may be enforced in any manner desired by such person. Such right of indemnification shall not be exclusive of any other right which such Directors, Officers or representatives may have or hereafter acquire and, without limiting the generality of such statement, they shall be entitled to their respective rights of indemnification under any By-Law, agreement, vote of stockholders, provisions of law or otherwise, as well as their rights under this Article.

Without limiting the application of the foregoing, the Board of Directors may adopt By-Laws from time to time with respect to indemnification to provide at all times the fullest indemnification permitted by the law of the State of Nevada and may cause the Corporation to purchase and maintain insurance on behalf of any person who is or was a Director or Officer of the Corporation, or is or was serving at the request of the Corporation as a director or officer of another corporation, or as its representative in a partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred in any such capacity or arising out of such status, whether or not the Corporation would have the power to indemnify such person.

TENTH: The name and address of the incorporator of the Corporation is as follows:

| <u>NAME</u> | <u>ADDRESS</u> |
| --- | --- |
| Dalton Wilson | P. O. Box 165<br>Austin, NV 89310 |

IN WITNESS WHEREOF, I have hereunto set my hand this 5th day of December, 1989, hereby declaring and certifying that the facts state hereinabove are true.

Dalton Wilson
DALTON WILSON

STATE OF NEVADA )
: ss.
County of Churchill )

On this 5th day of December, 1989, personally appeared before me, a Notary Public, DALTON WILSON, who acknowledged to me that he executed the foregoing instrument.

SHARON M. BRANDT
Notary Public - State of Nevada
Appointment Recorded in Churchill County
MY APPOINTMENT EXPIRES JULY 1, 1992

Sharon M. Brandt
NOTARY PUBLIC

**EXHIBIT "B"**

ASSIGNED

AMENDED
APPLICATION FOR PERMIT

Serial No. 4613

TO APPROPRIATE THE PUBLIC WATERS OF THE STATE OF NEVADA

Date of first receipt and filing in State Engineer's office OCT-1 1917
Returned to applicant for correction OCT-7 1917
Corrected application filed DEC-6 1917

The undersigned Thomas Brackney (Name of applicant.)
of Beowawe, County of Eureka,
State of Nevada, hereby makes application for permission to appropriate the public waters of the State of Nevada as hereinafter stated. (If applicant is a corporation give date and place of incorporation.)

1. The source of the proposed appropriation is Under Wood Canyon (Name of stream, lake, or other source.)

2. The amount of water applied for is Five (5) second-feet. (One second-foot equals 40 miners' inches.)

3. The water to be used for Irrigation, Stock and domestic purposes. (Irrigation, power, mining, manufacturing, domestic, or other use.)

4. The water is to be diverted from its source at the following point: Underwood Canyon S.W. ¼ of N.E. ¼ of Sec. 12, T. 22 N., R. 47 E. M.D.B. & M.
(Describe as being within a 40-acre subdivision of public survey, or by course and distance to a section corner. If on unsurveyed land it should be so stated.)

IF THE WATER IS TO BE USED FOR IRRIGATION, SUPPLY THE FOLLOWING INFORMATION:

(a) Number of acres to be irrigated is One hundred sixty (160) acres.

(b) Description of land to be irrigated S. ½ of NW¼, and N. ½ of S.W. ¼, Sec. 12, T. 22 N., R. 47 E., M.D.B. & M.
(Describe by legal subdivision, or if on unsurveyed land it should be so stated and a description provided in accordance with special instruction from the State Engineer when application is returned for correction.)

(c) Irrigation will begin about April 5th (Month.) and end about October 1st, (Month.) of each year.

IF WATER IS TO BE USED FOR POWER, MINING, TRANSPORTATION, OR OTHER USE, SUPPLY THE FOLLOWING INFORMATION:

(d) Power to be developed is ___ horsepower.

(e) Works to be located
(Give 40-acre subdivision on which works will be located, or locate by course and distance to a section corner.)

(f) Point of return of water to stream Not returned to stream.
(Describe in same manner as point of diversion.)

(g) Remarks

ASSIGN

Application No. 1615 Certificate Record No. 1656 Book 6 Page 1556

# THE STATE OF NEVADA

## CERTIFICATE OF APPROPRIATION OF WATER

WHEREAS Thomas Brackney has presented to the State Engineer of the State of Nevada Proof of Application of Water to Beneficial Use, from Underwood Canyon through pipeline and ditches for Irrigation and Domestic purposes. The point of diversion of water from the source is as follows: NW¼ NE¼ Sec. 7, T. 22 N., R. 48 E., M.D.B.&M. or at a point which bears S. 30° 30' E., 1300 feet distant from N¼ Cor. Sec. 7, same township and range, situated in Lander County, State of Nevada.

NOW KNOW YE, That the State Engineer, under the provisions of Section 72, Chapter 140, Statutes of 1913 has determined the date, source, purpose and amount of such appropriation, together with the place to which such water is appurtenant, as follows:

Name of appropriator John Hickison

Post-office address Austin, Nevada

Amount of appropriation 0.323 C.F.S. or 117 acre feet for the season.

Period of use, from April 1st to Oct. 1st of each year

Date of priority of appropriation October 1, 1917

Description of irrigated land to which water is appurtenant;

7.74 acres in the NE¼ SW¼ Sec. 12, T. 22 N; R. 47 E., M.D.B.&M.

9.31 acres in the SE¼ NW¼ Sec. 12, T. 22 N; R. 47 E., M.D.B.&M.

15.22 acres in the SW¼ NW¼ Sec. 12, T. 22 N; R. 47 E., M.D.B.&M.

32.27 acres total.

The right to water hereby determined is limited to the amount which can be beneficially used, not to exceed the amount above specified, and the use is restricted to the place where acquired and to the purpose for which acquired.

IN TESTIMONY WHEREOF, I, GEO. W. MALONE, State Engineer of Nevada, have hereunto set my hand and the seal of my office, this 17th day of June, A. D. 19 30.

[signature]
State Engineer.

Recorded July 28, 1930. Book [illegible] Page 428 Lander County Records

DESCRIPTION OF PROPOSED WORKS

ater will be diverted by means of small earth and rock dam, and

ate manner in which water is to be diverted, whether by dam or other works, whether through pipes, ditches, flumes, or other conduits. If water

onveyed to the land to be irrigated by means of ditches, and

be stored in reservoirs it should be so stated and the location of the reservoir should be given with reference to the legal subdivisions.

aterals.

Estimated cost of works $1200.00

Estimated time required to construct works Two (2) years.

Remarks

For use of applicant.

Thomas Brackney, Applicant.

By

pared [signature]

s sheet inspected

, Engineer.

APPROVAL OF STATE ENGINEER

This is to certify that I have examined the foregoing appli-

tion, and do hereby grant the same, subject to the following lim-

ations and conditions:

This permit is issued subject to all prior rights on the source. standard headgate and weir must be installed at or near the point diversion to facilitate the measurement and control of water. e State reserves the right to regulate the use of the water herein anted at any and all times. It is distinctly understood that plicant agrees to the terms herein contained.

e amount of water to be appropriated shall be limited to the

ount which can be applied to beneficial use, and not to exceed

6 cubic feet per second. ( One & six tenths )

tual construction work shall begin on or before April 15, 1919.

oof of commencement of work shall be filed before May 15, 1919.

rk must be prosecuted with reasonable diligence and be completed

or before April 15, 1921.

oof of completion of work shall be filed before May 15, 1921.

plication of water to beneficial use shall be made on or before

ctober 15, 1923. Proof of the application of water to beneficial

se must be filed with State Engineer on or before November 15, 1923.

WITNESS MY HAND AND SEAL this 25th day

of February, 1919.

Proof of labor filed APR 16 1919

Map filed