**EXHIBIT "G"**

**UNDERWOOD LIVESTOCK**
Post Office Box 74
Austin, NV 89310

February 25, 2000

Gerald M. Smith
Field Manager
Bureau of Land Management
50 Bastian Road
Battle Mountain, NV 89820

Re: 2800, 4150, 8550 9230
(NV-060)
and
NV-060-428, 8550 (NV063.02)

Dear Mr. Smith:

This is in reply to your letter of October 5, 1998, regarding the dam constructed by this corporation in Underwood Canyon. Your letter appears to be a pure case of harassment.

1. You saw fit to send a copy of the letter to the Western Farm Credit Bank when in fact in the body of the letter you acknowledge the Western Farm Credit Bank has deeded the water rights to Don Bowman. As you well know, the Western Farm Credit Bank may be a potential lender to the corporation, and your notice to them of your bogus allegations could chill any opportunity to use the services of that bank.

2. You send a copy of the letter to the State of Nevada Division of Water Resources, and you threaten to initiate action to have the water right forfeited without providing any authority whatsoever for forfeiture of that water right. This has caused me considerable time and expense to clarify with the State Engineer, which I did not get resolved with the State Engineer until August 24, 1999.

3. Your letter requests clear documentation of the current water right holder. However, you acknowledged in the letter that the current water right holder is Don Bowman. This request is pure harassment.

4 You ask for evidence that the water right has been put to beneficial use in accordance with state law. However, you cite in your letter the Certificate of Appropriation issued on June 17, 1930, which is Certificate No. 1656 pursuant to Application No. 4613, a copy of which I have enclosed. I would

recommend you consult your attorney regarding this request so that you can be informed the State Engineer does not issue certificates of appropriation unless there has been satisfactory proof of beneficial use filed with the State Engineer. Here again this request by you is absolutely ludicrous and pure harassment.

5. You also sent a copy of that letter to the U.S. Army Corps of Engineers obviously in an attempt to motivate them to harass me based on the false statements set forth in the letter.

6. You allege the dam constructed pursuant to my water right is located in the Wilderness Study Area, yet I am sure you are well aware the dam is within the Cherry Stem Road indicated as an exception to the Wilderness Study Area. I am also sure you are well aware that pursuant to the recent decision of the United States Court of Federal Claims in Case No. 91-1470L filed November 5, 1998, wherein E. Wayne Hage was a plaintiff, and the United States was a defendant, provides that a ditch right of way includes the ground for 50 feet on either side of the ditch. Here again your assertion that the dam this company constructed was within the Wilderness Study Area was absolutely false, and you knew it to be false when you made the statement. You had in your possession the Wilderness Study Area map, and you had in your possession my Certificate of Appropriation No. 1656 with a priority date of October 1, 1917. If the dam and pipeline were in the WSA, the WSA was improperly identified.

7. You have issued an IMP Violation Discovery Notice dated October 30, 1998, with the clear intention of damaging my reputation and to cause me to be rejected by my peers in the community without any factual basis whatsoever. This is another example of your pure harassment of me.

I am sure you are aware your job description does not provide for you to make false and misleading statements concerning citizens of the United States, nor does it provide for you to harass citizens of the United States. Your act set forth in your October 5, 1998 letter, together with your request of February 18, 2000 for a meeting concerning that matter, are pure ultra vires acts and subject you to personal liability for the grief and harassment visited upon this corporation. Please furnish a copy of all documents you have in your possession that support the allegations of your letter of October 5, 1998, and the IMP Violation Discovery Notice dated October 30, 1998.

Please consider this letter a formal demand to immediately furnish me and this corporation an apology and to notify each and

every person, including the general public, of your apology and withdrawal of the IMP Violation Discovery Notice. As you are well aware, my water rights pursuant to Certificate No. 1656 with a priority date of October 1, 1917, and the patent issued to my predecessor in interest dated March 1, 1924, signed by President Calvin Coolidge, granted to my predecessor all appurtenances, including water rights and right to ditches and reservoirs in connection with such water rights. I am clearly not required to make any application to the BLM or any other federal agency to exercise these rights granted this corporation by President Coolidge in 1924.

Best regards,

Dalton Wilson, President
Underwood Livestock

ASSIGNED

Application No. 4615 Certificate Record No. 1656 Book 6 Page 1656

# THE STATE OF NEVADA

## CERTIFICATE OF APPROPRIATION OF WATER

WHEREAS Thomas Brackney has presented to the State Engineer of the State of Nevada Proof of Application of Water to Beneficial Use, from Underwood Canyon through pipeline and ditches for Irrigation and Domestic purposes. The point of diversion of water from the source is as follows: ~~NW¼ NE¼ Sec. 7, T. 22 N.;~~ R. 48 E., M.D.B.&M. or at a point which bears S. 30° 30' E., 1300 feet ~~distant from N¼ Cor. Sec. 7, same township and range.~~ situated in Lander County, State of Nevada.

NOW KNOW YE, That the State Engineer, under the provisions of Section 72, Chapter 140, Statutes of 1913 has determined the date, source, purpose and amount of such appropriation, together with the place to which such water is appurtenant, as follows:

Name of appropriator John Hickison

Post-office address Austin, Nevada

Amount of appropriation 0.323 C.F.S. or 117 acre feet for the season.

Period of use, from April 1st to Oct. 1st of each year

Date of priority of appropriation October 1, 1917

Description of irrigated land to which water is appurtenant:

7.74 acres in the NE¼ SW¼ Sec. 12, T. 22 N; R. 47 E., M.D.B.&M.

9.31 acres in the SE¼ NW¼ Sec. 12, T. 22 N; R. 47 E., M.D.B.&M.

15.22 acres in the SW¼ NW¼ Sec. 12, T. 22 N; R. 47 E., M.D.B.&M.

32.27 acres total.

The right to water hereby determined is limited to the amount which can be beneficially used, not to exceed the amount above specified, and the use is restricted to the place where acquired and to the purpose for which acquired.

IN TESTIMONY WHEREOF, I, GEO. W. MALONE, State Engineer of Nevada, have hereunto set my hand and the seal of my office, this 17th day of June A. D. 1930.

[signature]

State Engineer.

Recorded July 28, 1930. Bk. Water Claims Page 4[illegible]

[illegible] County Records

C. L. M.

ASSIGNED

AMENDED
APPLICATION FOR PERMIT Serial No. 4613
TO APPROPRIATE THE PUBLIC WATERS OF THE STATE OF NEVADA

Date of first receipt and filing in State Engineer's office OCT-1 1917
Returned to applicant for correction OCT-7 1917
Corrected application filed DEC-5 1917

The undersigned Thomas Brackney
Name of applicant.
of Beowawe, County of Eureka,
State of Nevada, hereby makes application for permission to appropriate the public waters of the State of Nevada, as hereinafter stated. (If applicant is a corporation give date and place of incorporation.)

1. The source of the proposed appropriation is Under Wood Canyon
Name of stream, lake, or other source.

2. The amount of water applied for is Five (5) second-feet.
One second-foot equals 40 miners' inches.

3. The water to be used for Irrigation, Stock and domestic purposes,
Irrigation, power, mining, manufacturing, domestic, or other use.

4. The water is to be diverted from its source at the following point: Underwood Canyon S.W.¼ of N.E.¼ of Sec.12, T.22 N., R.47 E.
Describe as being within a 40-acre subdivision of public survey, or by course and distance to a section corner. If on unsurveyed land it should be so stated.
M.D.B. & M.,

IF THE WATER IS TO BE USED FOR IRRIGATION, SUPPLY THE FOLLOWING INFORMATION:

(a) Number of acres to be irrigated is One hundred sixty (160) acres.

(b) Description of land to be irrigated S.½ of NW¼, and N.½ of S.W.¼,
Describe by legal subdivision, or if on unsurveyed land it
Sec.12, T.22 N., R. 47 E., M.D.B. & M.,
should be so stated and a description provided in accordance with special instruction from the State Engineer when application is returned for correction.

(c) Irrigation will begin about April 5th and end about October 1st, of each year.
Month. / Month.

IF WATER IS TO BE USED FOR POWER, MINING, TRANSPORTATION, OR OTHER USE, SUPPLY THE FOLLOWING INFORMATION:

(d) Power to be developed is ______ horsepower.

(e) Works to be located
Give 40-acre subdivision on which works will be located, or locate by course and distance to a section corner.

(f) Point of return of water to stream Not returned to stream.
Describe in same manner as point of diversion.

(g) Remarks

## DESCRIPTION OF PROPOSED WORKS

ater will be diverted by means of small earth and rock dam, and
...te manner in which water is to be diverted, whether by dam or other works, whether through pipes, ditches, tunnels, or other conduits. If water
onveyed to the land to be irrigated by means of ditches, and
o be stored in reservoirs it should be so stated and the location of the reservoir should be given with reference to the legal subdivisions.
aterals.

Estimated cost of works $1200.00

Estimated time required to construct works Two (2) years.

Remarks

For use of applicant.

Thomas Brackney, Applicant.

By

ipared [illegible]

.s sheet inspected

, Engineer.

## APPROVAL OF STATE ENGINEER

This is to certify that I have examined the foregoing application, and do hereby grant the same, subject to the following limitations and conditions:

This permit is issued subject to all prior rights on the source. standard headgate and weir must be installed at or near the point diversion to facilitate the measurement and control of water. e State reserves the right to regulate the use of the water herein anted at any and all times. It is distinctly understood that plicant agrees to the terms herein contained.

e amount of water to be appropriated shall be limited to the ount which can be applied to beneficial use, and not to exceed .6 cubic feet per second. ( One & six tenths )

tual construction work shall begin on or before April 15, 1919.

oof of commencement of work shall be filed before May 15, 1919.

rk must be prosecuted with reasonable diligence and be completed on or before April 15, 1921.

roof of completion of work shall be filed before May 15, 1921.

pplication of water to beneficial use shall be made on or before ctober 15, 1923. Proof of the application of water to beneficial use must be filed with State Engineer on or before November 15, 1923.

WITNESS MY HAND AND SEAL this 25th day of February, 1919.

Proof of labor filed APR 16 1919

Map filed [illegible]

**EXHIBIT "H"**

DANIEL G. BOGDEN
United States Attorney
District of Nevada
BLAINE T. WELSH
Assistant United States Attorney
Bar No. 4790
333 Las Vegas Blvd. So., #5000
Las Vegas, Nevada 89101
Ph: (702) 388-6336
Fax: (702) 388-6787

Attorneys for the United States.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DON BOWMAN and DALTON WILSON,<br>Plaintiffs,<br>vs.<br>BRUCE BABBITT, et al.,<br>Defendants. | CV-N-00-0506-HDM (RAM) |

**DECLARATION OF GAIL GIVENS**

Pursuant to 28 U.S.C. § 1746, I, Gail G. Givens declare as follows:

1. I am employed by the United States Department of the Interior, Bureau of Land Management ("BLM"), as Assistant Field Manager for Nonrenewable Resources, in the Battle Mountain Field Office. I have held this position since November, 1999. In total, I have worked for the BLM for more than 19 years, and have held numerous positions, including Range Conservationist, Realty Specialist, Area Manager, and Management Analyst.

2. In connection with an investigation of the alleged trespass by Mr. Bowman and Mr. Wilson on public lands, I went to Underwood Canyon with a surveyor in an attempt to determine the point of diversion described in the original water rights application, No. 4613. Using Global Positioning System (GPS) survey equipment we located the "iron pipe" referenced in the 1926 Culture Map which was used to provide bearing and distance to the record point of diversion for Water Right Application No. 4613. This point was actually the N1/4 corner of Section 7, T22N, R48E, an iron pipe with regulation brass cap, set in 1915. Beginning at the above-referenced point we used GPS and navigated a bearing of South 30 degrees 30 minutes East for a distance of 1300 feet to the Record Point of Diversion for Water Right Application No. 4613. This point falls on the southern bank of the creek in Underwood Canyon, and is approximately four feet south of the center of the creek.

3. We measured the distance from this original point of diversion as described in Application No. 4613 to the place where Mr. Wilson installed a diversion structure in 1998. The original point of diversion described in Application No. 4613 is 377 feet down canyon from the place where Mr. Wilson built his dam or diversion structure. Further, we measured the distance between the place where Mr. Wilson installed his diversion structure and the place where an old board and piece of metal can be seen. That distance was 46 feet. Thus, the record point of diversion was 423 feet down canyon from what Plaintiffs claim constitutes the original point of diversion.

4. Further, during that trip and on earlier trips, I have examined the area where the pipeline that was allegedly installed in the 1920s had run. Portions of the pipeline are missing. In some areas, sections of pipe hang in midair, having been washed out by the stream in Underwood Canyon. At one point, where the pipeline crossed the road, a section of pipe is lying in the road.

That section of pipeline is heavily damaged and disconnected from the other portions of the pipeline. From these trips, I can state that the pipeline is in a state of total disrepair and could not carry water from Underwood Canyon to private property in Section 12, Township 22 North Range 47 East.

5. The BLM established the Simpson Park Wilderness Study Area in 1980. The area where Mr. Wilson built his diversion structure in 1998 and the claimed original point of diversion are within the wilderness study area ("WSA") boundary.

6. The BLM has incurred costs and expenses as a result of Plaintiffs' unauthorized construction of a diversion structure. The United States incurred costs of $6,722.16 in management and staff time investigating and processing the trespass action (see Attachment 1).

7. In addition, the United States incurred costs of $21,178.48 in removing the structure Mr. Wilson installed, and in rehabilitating the site. This included a contract for $8,630 with Native Resources International for the Track Hoe, support vehicles and manpower to do the physical removal of the structure. The remainder of those costs are for employee and vehicle costs, meals on site, and materials to effect rehabilitation. As a part of that expense, the actual rehabilitation crew staff costs for time expended were $828.66 (see Attachments 2 and 3).

Total costs recorded to date are $27,900.64.

GAIL G. GIVENS

ATTACHMENT 1

The following is the list of people who have worked on the Underwood Canyon trespass case, N-66189, together with the hours each worked on the case through the end of pay period 2000-08.

| Name | Position | Hours | Rate/ hour | Total $ |
|---|---|---|---|---|
| Gerald Smith | Field Manager | 18 | $36.70 | 660.60 |
| Gail Givens | Assistant Field Manager, Nonrenewable Resources | 13 | $31.58 | 410.54 |
| Walt Brown | Geologist/Wilderness | 84 | $25.70 | 2,158.80 |
| Mary Craggett | Realty Specialist | 59 | $25.86 | 1,525.74 |
| Chuck Lahr | Realty specialist | 04 | $19.26 | 77.04 |
| Kathy Clossin | Ranger | 48 | $33.74 | 1619.52 |
| Robert Posey | Ranger | 08 | $33.74 | 269.92 |
| TOTAL | | | | $6,722.16 |

ATTACHMENT 2

# COST REIMBURSEMENT LOG

N-66189
Case Number: NV-060-428

Page 1 of 3

Violator Name: Dalton Wilson
Address:

Description: Underwood Dam Removal

| Date | Description | Costs |
|---|---|---|
| | **EQUIPMENT & MATERIALS** | |
| 9-26-00 to 9-27-00 | Contract #FGP000051 | $8,630.00 |
| 9-26-00 to 9-27-00 | Transport = I149535<br>63022 to 63425 = 403 miles @ $ .78/mile | $ 314.34 |
| 9-26-00 to 9-27-00 | Backhoe = I138592<br>1051 to 1052 = 1 hour @ $19.15/hr | $ 19.15 |
| 9-26-00 to 9-27-00 | Blue Flatbed = GSA 71-08252<br>47822 to 48162 = 340 miles @ $ .29/mile | $ 98.60 |
| 9-26-00 to 9-27-00 | Support Pickup = I266344<br>24058 to 24469 = 411 miles @ $ .31/mile | $ 127.41 |
| 9-26-00 to 9-27-00 | Support Explorer = I259066<br>28,021 to 28,403 = 382 miles @ $ .16/mile | $ 61.12 |
| 9-26-00 to 9-27-00 | Chevy Command Vehicle = I266784<br>6,409 to 6,818 = 409 miles @ $ .31/mile | $ 126.79 |
| 9-26-00 to 9-27-00 | Fire Truck #6941<br>250 miles @ $1.30/mile = | $ 325.00 |
| 9-26-00 to 9-27-00 | Ranger Vehicle #1 - #I266782<br>396 miles @ $.29/mile = | $ 114.84 |
| 9-26-00 to 9-27-00 | Ranger Vehicle #2 - Chevy Tahoe - I262068<br>704 miles @ .29/mile = | $ 204.16 |
| 9-26-00 to 9-27-00 | Special Agent Vehicle #1 = #I262342<br>684 miles @ $.21/mile | $ 143.64 |

| | | |
|---|---|---|
| 9-26-00 to 9-27-00 | Special Agent Vehicle #2 = Chevy Tahoe<br>402 miles @ $.29/mile | $ 116.58 |
| 9-26-00 to 9-27-00 | Port-O-Potty | $ 200.00 |
| 9-26-00 | Lunches & Dinners | $ 247.00 |
| 9-26-00 to 9-27-00 | Water<br>2 cases @ 32 bottles per case @ $33.60/case | $ 67.20 |
| 9-26-00 | Windshield for Support Pickup | $ 208.82 |
| 9-27-00 | Lunches | $ 112.50 |
| 9-28-00 | Fence<br>14 - 2" ID steel posts @ $13.02 ea $ 182.28<br>9 = 1.25" ID steel posts @ $7.19 ea $ 64.71<br>Nuts & bolts for steel corners 4 @ $51.75 $ 207.00<br>230 feet smooth wire @ $0.02/foot $ 4.60<br>690 feet barbed wire @ $0.03/foot $ 20.70<br>25 T-posts & clips @ $2.19 ea $ 54.75<br>Stays 25 @ $.20 ea = $ 5.00 | $ 539.04 |
| 9-28-00 | Vegetation Mats | $1,400.90 |
| 9-28-00 | Seed<br>Bluebunch wheatgrass = 10 lbs @ $6.40/lb = $ 64.00<br>Idaho fescue = 10 lbs @ $19.23/lb = $192.30<br>Indian ricegrass = 10 lbs @ 16.50/lb = $165.00<br>Sandberg bluegrass = 20 lbs @ 6.00/lb = $120.00 | $ 541.30 |
| | Total Equip.&Materials | $13,598.39 |
| | **LABOR** | |
| | Brown, Walt - Project Coordinator<br>GS-11/6 39.5 hours @ $23.39/hr = $923.91 | $ 923.91 |
| | DiSimone, James - Equipment Operator<br>WG-5/1 20 hours regular @ 13.02/hour = $260.40<br>8.5 hours overtime @ $19.53/hour = $166.01 | $ 426.41 |
| | Givens, Gail - Manager's Representative<br>GS-13/1 30 hours regular time @ $28.57/hr = $857.10 | $ 857.10 |

| | | |
|---|---|---|
| | Hamby, Jack - Operations Supervisor, Logistics<br>GS-11/4 16 hours regular - @ $22.05/hour = $352.80<br>8.5 hours overtime @ $27.36/hour = $232.56 | $ 585.36 |
| | Layton, Dave - Lead Equipment Operator<br>WG-10/5 26 hours @ $ 19.74/hour = $513.24 | $ 513.24 |
| | Pattison, Mike - Engine Foreman<br>GS 8/5 12 hours regular @ $17.00/hour = $204.00<br>13 hours overtime @ $25.50/hour = $331.50 | $ 535.50 |
| | Fireman #1 - w/glasses | no charge |
| | Fireman #2 - w/ear rings | no charge |
| | Buffi Howard - Dispatcher<br>GS-4/1 8 hours regular @ 9.77/hour = $78.16<br>2.5 hours overtime @ $14.66/hour = $36.65 | $ 114.81 |
| | Sandy Sherwood - Dispatcher<br>GS-7/5 16 hours regular @ $15.35/hour = $245.60<br>6.5 hours overtime @ $23.03/hour = $149.69 | $ 395.29 |
| | Pirtle, Mark - Special Agent<br>GS-12/5 30 hours @ 27.23 = $816.90 | $ 816.90 |
| | Posey, Bob - Special Agent<br>GS-12/4 16 hours @ $26.43/hour = $422.88 | $ 422.88 |
| | Wagers, William - Ranger<br>GS-11/6 15.5 hours @ $23.39/hour $362.55<br>Perdiem $155.72 | $ 518.27 |
| | Zuber, Stan - Ranger<br>GS-11/8 16 regular hours @ $24.72 = $395.52<br>9 overtime hours @ $27.36 = $246.24 | $ 641.76 |
| | Total Labor | $ 6,751.43 |
| | **GRAND TOTAL** | $20,349.82 |

ATTACHMENT 3

**Underwood Rehabilitation Crew Cost**

| Date | Job Description | Details | Cost |
|---|---|---|---|
| Xx/xx/00 | Project Planning: Field trip with Managers | Wildlife Management Biologist- Duane Crimmins<br>GS 11/10 6 hours @ 26.06/hr= $156.36 | $156.36 |
| 08/22/00 | Rehabilitation: Material Design, Order, Delivery & Storage | ECO Associate, Hydrologist- Jeremy Jarnecke<br>ECO 8 hours @ $14.07= $112.56 | $112.56 |
| | | Wildlife Management Biologist- Duane Crimmins<br>GS 11/10 4 hours @ 26.06/hr= $104.24 | $104.24 |
| 9/28/00 | Instillation of Vegetation Mats and Fence | ECO Associate, Hydrologist- Jeremy Jarnecke<br>ECO 12 hours @ $14.07= $168.84 | $168.84 |
| | | Wildlife Management Biologist- Duane Crimmins<br>GS 11/10 11 hours @ 26.06/hr= $286.66 | $286.66 |
| Grand Total | | | $828.66 |