# Defendant's Exhibit B

United States Department of the Interior

**Bureau of Land Management**
Battle Mountain Field Office
50 Bastian Road
Battle Mountain, Nevada 89820
(702)635-4000 Fax(702)635-4034

In Reply Refer to:
NV-060-428
8550
(NV063.02)

OCT 5 1998

CERTIFIED MAIL NO. Z 355 899 136
RETURN RECEIPT REQUESTED

Dalton Wilson
P. O. Box 165
Austin, Nevada 89310

Dear Mr. Wilson:

On June 15 and August 6, 1998, members of my staff had the opportunity to talk with you about a recently constructed dam in Underwood Canyon on public land, MDM, T. 22 N., R. 48 E., Section 7. During the discussions, you said that you had built the dam and have plans to construct a pipeline in the near future that would convey water from the dam to the mouth of the canyon for irrigation purposes.

The Bureau of Land Management (BLM) has determined construction of the dam to be an unauthorized activity that has resulted in surface disturbance and placement of facilities in a wilderness study area (WSA). The rationale for this determination follows.

The dam was constructed with 19 heavy equipment-type tires in the Simpson Park WSA. The surface disturbance associated with the dam is 0.13 acres. Facilities within WSAs are permitted only if they meet Interim Management Policy For Lands Under Wilderness Review nonimpairment criteria. Exceptions can be made if a valid existing right for a facility would be unreasonably constrained by the nomimpairment criteria.

The dam does not meet nonimpairment criteria. The nonimpairment criteria state:

> "a. The use, facility or activity must be temporary. This means a temporary use that does not create surface disturbance or involve placement of facilities <u>may</u> be allowed if such use can easily and immediately be terminated upon wilderness designation.

b. When the use, activity, or facility is terminated, the wilderness values must not have been degraded so far as to significantly constrain the Congress's prerogative regarding the area's suitability for preservation as wilderness."

There may be a valid existing water right and point of diversion where the dam is constructed. The State of Nevada, Division of Water Resources, has provided the BLM with a copy of a Certificate of Appropriation of Water issued on June 17, 1930, for the NW¼NE¼, Section 7, T. 22 N., R. 48 E., MDM, for Application 4613. The dam's location has the same legal description. Scraps of old wood are evident in the vicinity of the dam that may be remnants of the spring box shown on the culture map for Application 4613. There is no evidence that the spring box was maintained or that any other facility was ever built and maintained at the dam's location. This is based on analysis of aerial photographs dating back to 1967 and review of BLM records.

Current State of Nevada, Division of Water Resources, records show that Western Farm Credit Bank has held the involved water right since 1989. Current Lander County records show that the land to which the involved water right is appurtenant was quitclaim deeded to Don Bowman on May 23, 1994, by Western Farm Credit Bank. Don Bowman told the BLM in a September 10, 1998, phone conversation that he has leased the appurtenant land to Underwood Livestock Inc., Dalton Wilson, President. During the same conversation, Mr. Bowman also said that he is aware of and supports the dam's construction.

Various congressional acts could authorize usual and customary maintenance for facilities associated with the involved water right. Reconstruction of facilities associated with the involved water right requires authorization from the BLM. The dam, as built, is not usual and customary maintenance of an existing facility. BLM records show no authorizations of any kind for construction or reconstruction of the facilities associated with the involved water right.

You received a letter from the BLM on August 28, 1998, asking for your help in verifying that you qualify for a nonimpairment criteria exception. The letter also asked you to stop creating surface disturbance in the WSA.

As of this date, which is more than 30 days later, the BLM has not received your reply. The BLM requests that you, within 30 days of your receipt of this letter:

1) Notify the BLM in writing that additional construction activities associated with the dam or the proposed pipeline will not continue until the issues described above are resolved.

2) Provide clear documentation of the current water right holder to the BLM.

3) Provide evidence to the BLM that the involved water right has been put to beneficial use in accordance with State law. State law allows water rights to be forfeited if they have not been put to beneficial use for 5 consecutive years. BLM records indicate that the involved

water right has not been put to beneficial use for at least 31 years. The BLM may initiate action to have the water right forfeited.

4) Provide the BLM with any documentation indicating that the construction of the dam is authorized. Failure to comply with this request could result in dam removal and reclamation. Dam removal and reclamation activities would occur at your expense.

If you can show evidence of existing authorizations or water right ownership, you may be able to receive full authorization for a water diversion structure and an associated pipeline. These facilities would have to be constructed in accordance with all state and federal regulations and standards, including the Interim Management Policy for Lands Under Wilderness Review and State of Nevada regulations for dam construction.

I suggest that you contact me as soon as possible to arrange a meeting to discuss these points.

Sincerely,

M. Lee Douthit

for Gerald M. Smith
Field Manager

cc: Nevada BLM State Director, NV932.4
Don Bowman
State of Nevada, Division of Water Resources
Western Farm Credit Bank
Nancy Kang, U.S. Army Corps of Engineers