# Defendant's Exhibit F

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., Plaintiff, | ) | No. 05-162 L |
| v. | ) | Judge Mary Ellen Coster Williams |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS**

Pursuant to Rules 26 and 36 of the Rules of the United States Court of Federal Claims, Defendant United States of America hereby responds to Plaintiff's First Set of Requests for Admissions, served by U.S. Mail on January 26, 2006. By Stipulation, the parties agreed that Defendant would respond on or before March 7, 2006.

**Request for Admission 1:**

Attached as "Exhibit A" is a copy of Section 3 of the 1934 Taylor Grazing Act. Do you admit or deny that Section 3, in part, states that, "PROVIDED FURTHER. That nothing in this Act shall be construed or administered in any way to diminish or impair any right to the possession and use of water for mining, agriculture, manufacturing, or other purposes which has heretofore vested or accrued under existing law validly affecting the public lands or which may be hereafter initiated or acquired and maintained in accordance with such law."?

**Response:**

state "that the diversion structure of Water Certificate 1656 was in violation of the Interim Management Plan for the Simpson Park Wilderness Study Area." Instead, the Notice referred to the dam constructed by Dalton Wilson and stated: "Construction of the dam is unauthorized, and is an Interim Management Policy For Lands Under Wilderness Review (IMP) violation requiring public notification."

**Request for Admission 11:**

Attached as "Exhibit I" is a letter from the Friends of Nevada Wilderness to Gerald Smith, Field Manager in the Battle Mountain BLM Field Office dated December 1, 1998. The letter made certain recommendations to the BLM concerning the dam, the water right, the forfeiture of the water right, the transfer of Point of use, and the IMP violation. Do you admit or deny that the Battle Mountain Field Office followed each of the recommendations listed including the removal of the diversion structure?

**Response:**

Denied.

**Request for Admission 12:**

Do you admit or deny that following the removal of the water diversion structure on or about August 15, 2000, the BLM constructed a fence around the area of the destroyed water diversion structure thereby prohibiting entrance to that area by anyone?

**Response:**

Denied. BLM removed the dam on September 26, 2000, not August 15, 2000. Following removal of the dam, BLM installed a small fence around the area to prevent livestock from entering and trampling the riparian area; the fence does not "prohibit entrance to that area by

anyone."

**Request for Admission 13:**

Do you admit or deny that the BLM has, in its possession, color photographs of the water diversion structure before it was removed?

**Response:**

Admit. BLM has four series of color photographs of the dam prior to its removal.

**Request for Admission 14:**

Do you admit or deny that the BLM has, in its possession, color photographs of the area from which the water diversion structure was removed after it was removed?

**Response:**

Admit. BLM has a few color photographs of the area from which the dam was removed.

**Request for Admission 15:**

Do you admit or deny that the BLM had armed officers present at the water diversion structure site during the removal of the structure in order to prevent Dalton Wilson from interfering with the removal of the diversion structure which was for the water source conferred on Underwood Livestock, Inc. by Water Certificate 1656?

**Response:**

Denied.

**Request for Admission 16:**

Attached as "Exhibit J" is a copy of the bill from the BLM in the amount of $27,900.64. Do you admit or deny that this is the amount of money the BLM charged Mr. Wilson and Mr. Bowman for the removal of the diversion structure created to use water from the water source recognized