IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., | ) | |
| | ) | |
| Plaintiff | ) | No. 05-162 L |
| | ) | |
| v. | ) | Judge Mary Ellen Coster Williams |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h)(1) of the Rules of the Court of Federal Claims, Defendant United States of America submits the following proposed findings of uncontroverted fact in support of its Motion for Summary Judgment. The exhibits cited below accompany Defendant's Motion for Summary Judgment.

**A. Water Certificate 1656 and the Brackney Water Diversion Structure**

1. In 1917, Thomas Brackney applied to the Nevada State Engineer, Division of Water Resources, for a permit ("Permit 4613"), to appropriate water from Underwood Canyon. See Def. Ex. G at p. 2.

2. Mr. Brackney amended his application for Permit 4613 on December 5, 1917. Id. The amended application indicated that "[w]ater will be diverted by means of small earth and rock dam, and conveyed to the land to be irrigated by means of ditches, and laterals." Id. at p. 3. The State Engineer approved Permit 4613 as amended on February 25, 1919. Id.

3. On or about April 16, 1919, Mr. Brackney submitted an Affidavit of Labor and

Improvements for Permit 4613 to the State Engineer. Def. Ex. H. In that Affidavit, Mr. Brackney affirmed that he made improvements under Permit 4613, consisting of an "[e]arth dam constructed at about NE corner Section 6, T. 22 N., R. 48 E., and ditch constructed through said section approximately to SE ½ of NW ¼ Section 12, T. 22 N., R. 47 E. ("Brackney Water Diversion Structure")." Id. Sometime in the 1920s, a pipeline was installed in part of the ditch. See Def. Ex. I (Gail Givens Declaration ("Givens Decl.") at ¶ 4).

4. On June 17, 1930, the State Engineer issued a Certificate of Appropriation of Water (No. 1656) to Mr. Brackney, signifying that Permit 4613 had been developed to the extent that it was a perfected water right. Def. Ex. G. at p. 1.

5. On or about February 19, 1924, the United States issued a patent to Mr. Brackney under the Act of Congress of May 20, 1862 (a homestead act), for 80 acres of land described as the "south half of the northwest quarter of Section twelve in Township twenty-two north of Range forty-seven east of the Mount Diablo Meridian, Nevada, containing eighty acres . . . ." Def. Ex J.

6. In 1989, the 80 acres of land and Certificate 1656 were foreclosed upon and acquired by Western Farm Credit Bank. Def. Ex. E (Dalton Wilson Declaration ("Wilson Decl.") at ¶¶ 21-22). Don Bowman (a non-party to the instant action) acquired the land and Certificate 1656 from Western Farm Credit Bank in or around 1994. Id. at ¶¶ 22-23.

7. On May 20, 1994, Mr. Bowman and Mr. Wilson entered into a two-year lease agreement with an option to purchase the land and water rights described in the lease agreement. Def. Ex. D at p. 7 (Pl's Resp. to Request for Admissions ("RFA") No. 4); Def. Ex. K. Mr.

Bowman and Mr. Wilson did not extend the lease agreement in writing. See Def. Ex. D at p. 8 (Pl's Resp. to RFA No. 6).

8. Underwood Livestock, Inc. purchased the property on or about April 4, 2002. See id.

9. Underwood Livestock, Inc. lost the property by default in June 2005. See Def. Ex. M.

**B. The Wilson Water Diversion Structure**

10. By 1998, "scraps of old wood, which might be remnants of the spring box," and a pipeline that appears to have "been abandoned for at least 10 years . . . [with] small aspen trees growing through the metal[,]" were the only things that remained of the Brackney Water Diversion Structure. Dalton Wilson, Don Bowman, 156 IBLA 89, 99 n.12 (2001) (internal quotations and citations omitted) (attached for the court's convenience at Def. Ex. C); see also Def. Ex. B at p. 2; Def. Ex. I (Givens Decl. at ¶ 4).

11. In or around 1998, Mr. Wilson hauled nineteen heavy equipment tires into and adjacent to a stream in Underwood Canyon in order to construct a water diversion structure ("Wilson Water Diversion Structure"). See Def. Ex. B at p. 1. The diversion structure "consist[ed] of an earthen dam, reinforced with 19 stacked heavy equipment rubber tires, about 69 feet in length, crossing the creek that flows down Underwood Canyon, . . . virtually impounding the water." Def. Ex. C (156 IBLA at 90).

10. The Wilson Water Diversion Structure was located in Underwood Canyon on BLM-administered land in the NE1/4 of Section 7, Township 22 North, Range 48 East, Mount

Diablo Meridian, in Underwood Canyon, Lander County, Nevada. Id.

11. Mr. Wilson used an "old military four-by-four" to haul the tires three at a time into Underwood Canyon to build the dam. Def. Ex. A (Wilson Dep. at p. 80). He then "took a 933 [CAT] loader, crawler loader in there with a front-bucket on it and back grippers on it [and] installed the dam, just within 20 feet below the original [Brackney] structure [downstream]." Id. Mr. Wilson chose a location downstream of the Brackney Water Diversion Structure because "[i]t was narrower, plus there was a big chokecherry tree and a bunch of willows growing . . . ." Id. at p. 81. Mr. Wilson used heavy equipment tires (instead of replicating the Brackney Water Diversion Structure) because he believed that the tires were "foolproof and indestructible, other than fire. It don't rot. It don't deteriorate. It don't crack." Id. at p. 92.

12. Mr. Wilson used the 933 CAT loader to excavate the area where the tires were placed, and then "packed each layer with earth and worked all of the earth into the center of the tires so they was solid." Id. at p. 88. Mr. Wilson described the construction of the dam as follows:

> So I had these all packed, and I put earth over the top of them. And then I picked this tire up from the bottom of the bucket. And when I jammed that tire with that bucket with the weight of that 933 in there, it shut the flow of water off. And I immediately had some dirt already set up here, some rock fill and stuff that I had already - - was all ready for it. When I jammed that into that water to the level of these other two, I immediately went to bucket and fill into it, and we get on it with a bar and worked that gravel and stuff until we sealed the water, until the water all come over the tire. And then we backfilled in again these tires and cleaned the rest of the fill up that we had excavated.

Id. at pp. 88-89.

13. At no time prior to or after the construction of the Wilson Water Diversion Structure did Mr. Wilson seek authorization from the BLM to construct the Wilson Water Diversion Structure. Def. Ex. D at pp. 8-9 (Pl's Resp. to RFA No. 7).

14. Between October 5, 1998 and January 27, 2000, BLM encouraged Mr. Wilson and Mr. Bowman to seek a "right-of-way pursuant to Title V of FLPMA . . . that would authorize some manner of impoundment of the surface waters of the creek in Underwood Canyon and their conveyance to the appurtenant private lands owned by" Mr. Bowman. Def. Ex. C (156 IBLA at 91). Mr. Wilson chose not to seek a right-of-way authorization from BLM because he "felt none was needed." Def. Ex. A (Wilson Dep. at p. 95).

15. BLM removed the water diversion structure on or about September 26, 2000. Def. Ex. F at pp. 7-8 (Def's Resp. to RFA No. 12).

**C. The Interior Board of Land Appeals Decision**

16. On March 8, 2000, Mr. Wilson and Mr. Bowman were advised that the United States, through BLM, had instituted trespass proceedings against them for the construction of the Wilson Water Diversion Structure without a permit, pursuant to 43 C.F.R. 2801.3, under the authority of the Federal Land Policy and Management Act of 1976, 43 U.S.C. 1701 et. seq. Def. Ex. C (156 IBLA at 91).

17. On April 10, 2000, BLM issued a final decision that the construction of the Wilson Water Diversion Structure constituted a trespass on public land, requiring Mr. Wilson and Mr. Bowman to pay trespass damages and to cease the trespass. Id. at 89, 92. Mr. Wilson

and Mr. Bowman appealed and the Interior Board of Land Appeals issued a decision holding, among other things, that the Wilson Water Diversion Structure was constructed and maintained in trespass on public lands. Id. at 93, 97-99.

Dated: May 5, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s/ Kathleen L. Doster
KATHLEEN L. DOSTER
HELENANNE LISTERMAN
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0481 (phone)
(202) 305-0506 (fax)
Kathleen.Doster@usdoj.gov