# Defendant's Exhibit R

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-162 L |
| | ) | |
| v. | ) | Judge Mary Ellen Coster Williams |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DECLARATION OF GERALD M. SMITH

I, Gerald M. Smith, pursuant to the provisions of 28 U.S.C. § 1746, declare under penalty of perjury, that the statements contained herein are true and correct:

1. I am employed by the Department of the Interior, Bureau of Land Management ("BLM"), as the Field Manager of BLM's Battle Mountain Field Office in Nevada. I have worked for BLM for thirty years, during which time I have held various positions including Range Conservationist, Supervisory Range Conservationist, Range Staff Specialist, Area Manager, District Manager, and Field Manager.

2. As the Field Manager of the Battle Mountain Field Office, my primary duties include providing overall district leadership, motivation, direction, and execution of decisions required to implement and carry out the multiple-use mandate for the public land resources consistent with Bureau and Departmental policies within my delegated authority. This includes being responsible for the planning, organizing, implementing and evaluating a broad array of complex resource management programs requiring

intensive multiple-use management and protection of a variety of resources. This includes making final Field Office planning and programming decisions, resolution of both long-range and day-to-day planning and program conflicts.

3. On June 15, 1998, BLM discovered that someone had constructed a new, unauthorized water diversion structure on the creek in Underwood Canyon, which is situated on public lands managed by BLM's Battle Mountain Field Office. During BLM's investigation of the matter, Mr. Dalton Wilson advised BLM that he constructed the structure, consisting of nineteen heavy equipment tires, on behalf of Mr. Don Bowman, to impound and convey water to certain land owned by Mr. Bowman.

4. BLM encouraged Mr. Wilson and Mr. Bowman to seek a right-of-way pursuant to Title V of the Federal Land Management and Policy Act, to authorize Mr. Wilson to impound and convey water from the creek in Underwood Canyon to the relevant lands owned by Mr. Bowman. Neither Mr. Wilson nor Mr. Bowman sought such a right-of-way.

5. After issuing a Notice of Trespass / Notice to Cease and Desist to Mr. Wilson and Mr. Bowman in March 2000, in April 2000, BLM issued its Trespass Decision to Mr. Wilson and Mr. Bowman. In that decision, BLM indicated that as a result of its investigation, it concluded that Mr. Wilson's construction of the tire dam in Underwood Canyon was – and continued to be – unauthorized and a trespass on public lands. BLM informed Mr. Wilson and Mr. Bowman that they had 30 days to make arrangements with BLM for the satisfactory removal of the tire dam and rehabilitation of the site, or BLM would remove the tire dam and rehabilitate the site, at their expense.

6. Neither Mr. Wilson nor Mr. Bowman made any arrangements to remove the tire dam, or

rehabilitate the site.

7. As a result, on or about September 26, 2000, BLM removed the tire dam and placed the nineteen heavy-equipment tires in storage at BLM's Battle Mountain District Field Office wareyard, where they remain today pending a request by Mr. Wilson to take possession of the tires, and payment of outstanding trespass fees.

8. To rehabilitate the riparian area damaged by the trespass, BLM installed a small fence less than 4 feet high and 50 feet by 50 feet around the area.

9. At the time BLM installed the fence, Mr. Wilson was grazing cattle in the vicinity of and in the riparian area without a grazing permit, which is required in order to graze livestock on public lands managed by BLM. The fence was installed to prevent further damage to the riparian area by keeping the unauthorized cattle from continuing to congregate around and trample the riparian area.

10. Underwood Livestock, Inc. has never had a grazing permit to graze cattle on public lands within Underwood Canyon. Mr. Wilson did hold a grazing permit until May 26, 1995, when BLM was forced to cancel the permit as a result of Mr. Wilson's continued refusal to comply with the terms and conditions of his permit, including payment of grazing fees.

11. Since the fence has been installed, Mr. Wilson has not been denied access to the point of diversion allowed under Certificate 1656. BLM has only prevented Mr. Wilson's unauthorized cattle from accessing and trampling the riparian area where Mr. Wilson constructed the heavy-equipment tire dam.

12. Around the Fall of 2000, after BLM had removed the tire dam, Gail Givens, the Assistant Field Manager for Nonrenewable Resources, in BLM's Battle Mountain Field Office,

moved approximately two small dead logs across a primitive two-track road to deter vehicles from driving on an area of public land he referred to as a "wet meadow" where, because of the moisture, vehicles would often get stuck. The logs are easily movable. These logs are approximately a quarter mile (or more) upstream from the point of diversion allowed under Certificate 1656, and therefore, do not prevent access to the point of diversion.

13. To this day, Mr. Wilson has not paid the more than $27,900.64 in trespass costs for which he is liable under BLM's trespass regulations, including costs incurred by BLM in investigating the trespass, removing the unauthorized water diversion structure and taking steps to rehabilitate the damaged riparian area.

Executed this 26 day of May, 2006.

Gerald M. Smith