IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNDERWOOD LIVESTOCK, INC., Plaintiff | No. 05-162 L |
| v. | Judge Mary Ellen Coster Williams |
| UNITED STATES OF AMERICA Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h)(2) of the Rules of the Court of Federal Claims, Defendant United States of America, submits its response to Plaintiff's Statement of Undisputed Facts.

1. Plaintiff's Undisputed Fact Number 1: Plaintiff is a duly licensed Nevada corporation under the ownership of Dalton Wilson.

**Response:** Based on the documentation submitted by Plaintiff, Defendant does not dispute at this time that Plaintiff is a duly licensed Nevada corporation under the ownership of Dalton Wilson.

2. Plaintiff's Undisputed Fact Number 2: On October 1, 1917, Thomas Brackney made application to the Nevada State Engineer for a permit for water for irrigation and stock watering on 160 acres.

**Response:** Agree that on October 1, 1917, Thomas Brackney made application to the Nevada State Engineer for a permit to appropriate 5.0 cubic feet per second of water for irrigation, stock watering and domestic use on 160 acres of land, the application

was approved in 1919, and on June 17, 1930, the State Engineer issued Certificate of Appropriation of water (No. 1656) to Mr. Brackney, signifying that Permit 4613 had been developed to the extent that it was a vested water right. Under Certificate 1656, a total of 117 acre-feet of water may be diverted and used for domestic use and the irrigation of 32.27 acres from April 1 to October 31 of each year.

3. Plaintiff's Undisputed Fact Number 3: In each subsequent sale and transfer of the 80 acres since the issuance of water certificate 1656 the water right was included in each land transfer or sale.

**Response:** Disagree that the evidence presented by Plaintiff supports its statement that "[i]n each subsequent sale and transfer of the 80 acres since the issuance of water certificate 1656 the water right was included in each land transfer or sale," as several of the deeds do not mention "water rights." Defendant notes this is a legal question whether water certificate 1656 was legally transferred during each land transfer and sale "of the 80 acres since the issuance of water certificate 1656." This is an issue that does not need to be decided by the Court since Defendant for purposes of its motion for summary judgment is assuming that Don Bowman owned the water rights at issue in the case at the time of the alleged taking.

4. Plaintiff's Undisputed Fact Number 4: On March 1, 1924, President Calvin Coolidge issued letters of patent for the 80 acres described above and, in such letters, granted forever, "the right to any vested and accrued water rights and rights to ditches and

reservoirs used in connection with such water rights. . ."

**Response:** Defendant disagrees that Patent Number 932407 granted forever, "the right to any vested and accrued water rights and rights to ditches and reservoirs used in connection with such water rights. . ." Patent Number 932407 specifically states that the patent is "*subject to* any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts; and there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States. . ." (emphasis added).

5. Plaintiff's Undisputed Fact Number 5: The patent described in Undisputed Fact Number 4 was issued to Tom Brackney pursuant to the Homestead Act of 1862 for 80 acres in the Underwood and Wood Canyons area of Grass Valley in Lander County, Nevada.

**Response:** Defendant agrees that the patent referenced in Plaintiff's Undisputed Fact Number 4 was issued pursuant to the Act of Congress of May 20, 1862 for eighty acres described as "the south half of the northwest quarter of Section twelve in Township twenty-two north of Range forty-seven east of the Mount Diablo Meridian, Nevada. . ."

6. Plaintiff's Undisputed Fact Number 6: Since 1862 the property described in Undisputed Fact Number 4 has been sold numerous times and, in each sale, the patent and certificated water rights have remained in full force and effect up to and including the present owner.

**Response:** Plaintiff does not specify which "certificated water rights" are being referred to in this Undisputed Fact Number 6, and does not specify who the "present owner" is, making it difficult for Defendant to respond to Plaintiff's Undisputed Fact Number 6. However, Defendant disputes that Patent Number 932407 refers to "certificated water rights." In addition, Defendant believes that whether the "patent and certificated water rights have remained in full force and effect" is a legal question; however, this issue does not need to be decided by the Court since Defendant, for purposes of its motion for summary judgment, is assuming that Don Bowman owned the water rights at issue in the case at the time of the alleged taking.

7. Plaintiff's Undisputed Fact Number 7: On February 25, 2000 (7 months before the BLM removed the diversion structure which had been in place since Thomas Brackney acquired the patent and water rights) Dalton Wilson sent a letter to Gerald Smith informing Mr. Smith that Mr. Wilson had simply maintained and reconstructed the diversion structure in accordance with the patent and certificated water rights and that, based upon the patent and water rights preexisting the passage of Taylor Grazing Act and FLPMA, no authorization from the BLM was required to maintain the diversion structure for the purpose of irrigation, stock watering and domestic use.

**Response:** Defendant agrees that Dalton Wilson sent a letter to Gerald Smith dated February 25, 2000. Defendant disagrees that BLM "removed the diversion structure which had been in place since Thomas Brackney acquired the patent and water rights."

Instead, on September 26, 2000, BLM removed the new unauthorized water diversion structure constructed by Mr. Wilson in approximately 1998. Defendant disagrees that the letter states that "Mr. Wilson had simply maintained and reconstructed the diversion structure in accordance with the patent and certificated water rights and that, based upon the patent and water rights preexisting the passage of Taylor Grazing Act and FLPMA, no authorization from the BLM was required to maintain the diversion structure for the purpose of irrigation, stock watering and domestic use."

8. Plaintiff's Undisputed Fact Number 8: On September 25, 2000, BLM employees destroyed and removed the diversion structure and presented Dalton Wilson and Don Bowman with a statement of charges in the amount of $27,900.64 for the costs of investigation and removal.

**Response:** On September 26, 2000, BLM removed the unauthorized water diversion structure constructed by Mr. Wilson. See Defendant's Motion for Summary Judgment (May 5, 2006). BLM did not "remove[] the diversion structure which had been in place since Thomas Brackney acquired the patent and water rights." As a result of the trespass, BLM sent Mr. Wilson a Bill for Collection in the amount of $27,900.64 for the removal of the dam ($20,349.82), and rehabilitation of the site ($828.66).

9. Plaintiff's Undisputed Fact Number 9: Following the removal of the diversion structure, the defendant constructed a fence around the area on which the diversion structure had

been erected and maintained thereby preventing plaintiff from any access to the point of diversion. Then fence remains in place at the time of the filing of this motion.

**Response:** Disagree. On September 26, 2000, BLM removed the new water diversion structure constructed by Mr. Wilson in trespass. See Defendant's Motion for Summary Judgment (May 5, 2006). BLM did not "remove[] the diversion structure which had been in place since Thomas Brackney acquired the patent and water rights." Following the removal of Mr. Wilson's water diversion structure, BLM installed a small fence around the riparian area damaged by the trespass. At the time BLM installed the fence, Mr. Wilson was grazing cattle in the vicinity of and in the riparian area without a grazing permit, which is required in order to graze livestock on public lands managed by BLM. The fence prevented further damage to the riparian area by keeping the unauthorized cattle from trampling the area. Defendant disagrees that the fence prevented "plaintiff from any access to the point of diversion." Defendant agrees that the fence currently remains in place since Mr. Wilson has continued to graze cattle in the vicinity of the riparian area without a grazing permit.

10. Plaintiff's Undisputed Fact Number 10: Following the removal of the diversion structure, the defendant barricaded access to the certificated water source thereby preventing plaintiff from any access to the water source listed in Certificate 1656.

**Response:** Disagree. In the Fall of 2000, the Assistant Field Manager for Nonrenewable Resources, in BLM's Battle Mountain Field Office, moved approximately two

small dead logs across a primitive two-track road to deter vehicles from driving on an area of public land he referred to as a "wet meadow" where, because of the moisture, vehicles would often get stuck. These logs are approximately a quarter mile upstream from the point of diversion allowed under Certificate 1656, and therefore, do not prevent access to the "certificated water source."

11. Plaintiff's Undisputed Fact Number 11: On August 13, 1999, the Office of the Solicitor General sent a letter to the defendant stating that plaintiff had a valid and legal water right and a legal claim to the location of the water source and to the point of diversion.

**Response:** Defendant agrees that the Office of the Solicitor, United States Department of the Interior, sent Gerald M. Smith a letter on August 13, 1999. Defendant notes that this letter is "PROTECTED FROM DISCLOSURE: ATTORNEY-CLIENT COMMUNICATION, ATTORNEY WORK PRODUCT." Without waiving this objection, Defendant disputes that the letter "state[s] that plaintiff had a valid and legal water right and a legal claim to the location of the water source and to the point of diversion."

12. Plaintiff's Undisputed Fact Number 12: Because of the taking of the water source and the point of diversion and the destruction of the diversion structure, plaintiff lost at least the sum of $300,000.00 from the issuance of the Cease and Desist Order and the destruction of the diversion structure from the loss of the ability to irrigate for hay raising and stock watering.

**Response:** Disagree. Defendant disputes that there has been a compensable taking of a

certificated water right and water diversion structure and believes that whether plaintiff "lost" $300,000 is speculative. If the Court finds that there has been a compensable taking, Defendant will seek the assistance of an expert to determine the proper amount of just compensation.

Dated: June 1, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s/ Kathleen L. Doster
KATHLEEN L. DOSTER
HELENANNE LISTERMAN
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0481 (phone)
(202) 305-0506 (fax)
Kathleen.Doster@usdoj.gov