AMERICAN LEGAL SERVICES
Martin G. Crowley, Esq.
Nevada State Bar No. 3049
85 South LaVerne Street
Fallon, Nevada 89406
775-423-7088
Attorney for Plaintiff

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| UNDERWOOD LIVESTOCK, INC., a Nevada corporation, Plaintiff, vs. THE UNITED STATES, Defendant. | No. 05 - 162L<br>Judge Mary Ellen Coster Williams |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant requests that this Honorable Court deny plaintiff's Motion for Summary Judgment for three principal reasons. The first of these is that the "plaintiff does not have standing to sue for the taking because it did not own the water right at the time of the taking." (Defendant's opposition, p. 7). The second reason used is that, contrary to plaintiff's assertion in its complaint and in its Motion for Summary Judgment, "The United States has not taken plaintiff's certificated water right" (Defendant's Opposition, p. 9). The third reason is that "Plaintiff does not have a compensable property interest in construction and maintaining a water diversion structure on federal land (Defendant's Opposition, p. 11): This reply pleading will address the arguments in the order in which they were presented.

**A. PLAINTIFF DID HAVE STANDING TO SUE AT THE TIME OF THE ALLEGED TAKING**

Attached to this brief is "Exhibit A" which is a copy of an "Addendum" dated April 3, 1995. Its purpose is to show that, contrary to the defendant's assertion (page 12 of their Motion for

Summary Judgment) that "Plaintiff will be unable to do (i.e., that plaintiff had a compensable property interest on May 10, 2000 and on September 25, 2000) because in 2000, Mr. Wilson , and not Underwood Livestock, Inc., leased fee property and water rights (with any accompanying valid, existing rights-of--way), from Mr. Bowman." The "Addendum to Lease Agreement" (Exhibit A) states that "This addendum, to the lease agreement of May 20,1994 between Don Bowman and Dalton Wilson, declares that Underwood Livestock, a Nevada corporation, is hereby bound to the terms of the said lease agreement. This addendum is made and entered into this third day of April 3, 1995." Moreover, as shown by Exhibit B (a copy of correspondence from Don Bowman to Mr. Wilson dated May 23, 1995), to this opposition there clearly were ongoing discussions between Mr. Bowman and Mr. Wilson over the property. Exhibit C is a copy of a letter from attorney James F. Sloan to Dalton Wilson regarding "Underwood Livestock, Inc./Bowman." it is dated November 12, 1997. It too demonstrates that the plaintiff in this case, Underwood Livestock, Inc., was preparing to purchase the property along with the appurtenant water and grazing rights. Thus it is respectfully submitted that plaintiff Underwood Livestock, Inc. did, in fact, have an interest in the water right and right-of-way at issue in this case at the time of the alleged takings.

## B. THE UNITED STATES HAS TAKEN PLAINTIFF'S CERTIFICATED WATER RIGHT

In plaintiff's Statement of Undisputed Facts in support of Plaintiff's Motion for Summary Judgment, plaintiff sets forth the entire history of the real property and the diversion structure which is the subject of this case supported by copies of the original amended application for the water permit, certificate 1656 issued by the State Engineer dated June 17, 1930, certified copies of all of the successive deeds to the property which included the transference of the water rights in each of the successive sales, copies of the Letters of Patent dated March 1, 1924 for the 80 acres (and, which included the language, "the right to any vested and accrued water rights and rights to ditches and reservoirs used in connection with such water rights"), copies of the letter Mr. Wilson sent to Mr. Smith on February 25, 2000, and a copy of the letter from the Office of the Solicitor General to the BLM dated August 13, 1999. stating that

the plaintiff had a valid and legal water right and a legal claim to the location of the water source and to the point of diversion. Plaintiff also furnished copies of photographs showing that the diversion structure had been removed and that a fence had been constructed around the water source. The defendant does not dispute these clearly established facts. Plaintiff has consistently alleged that these two actions have, for the past 5 years, prevented plaintiff from diverting the water from the water source so that plaintiff could use the water for the purpose of growing feed for livestock. The defendant has not responded to this allegation so it too seems to be undisputed.

Instead, the defendant repeatedly argues that plaintiff "has been found to have constructed and maintained a water diversion structure "in trespass on BLM-managed lands" and that "Mr. Wilson refused to remove the structure and rehabilitate the affected lands, or make arrangements for such actions" after which the "BLM removed the structure and took steps to rehabilitate the area, which it undisputedly has the authority to do."

Interestingly, not in the Defendant's Opposition to Plaintiff's Motion For Summary Judgment (filed May 1, 2006) nor in their own Motion for Summary Judgment, does the government refer to 43 CFR 2800, effective April 22, 2005, which directly addresses the pertinent issues in this case. In fact, one could argue that the history of the 1866 Act and its relationship to rights-of-way, as explained in the regulation, squarely disposes of the main aspects of this entire case.

Federal Register/Vol.7O, No. 77, page 20979, states, under the section 2801.6 entitled, "Scope," in pertinent part as follows:

"In the 1866 Act, Congress granted Federal protection for vested state law-based water rights and rights-of-way for ditches, canals, and other structures necessary for the use of water. Under the Act, a private party could acquire a right-of-way across Federal Lands without any action by the government - no application or filing with the governments necessary- and no governmental approval was required. The right-of-way vested once a ditch or canal was constructed and a water right acquired. Once the right-of-way was created, it existed in perpetuity and included the right to operate and maintain the ditch, canal or conduit within the right-of-way."

The regulation then goes on to state, in the same section, and with regard to the impact of FLPMA on the 1866 Act, "Instead, FLPMA expressly preserved and protected such pre-existing private rights-of-way. Section 701(a) of FLPMA provides that FLPMA does not terminate "any valid lease, permit, patent, right-of-way, or other land use right or authorization: existing at the time of FLPMA's enactment. In addition, section 701(h) of FLPMA provides that all actions taken by the Secretary in the exercise of her authority under FLPMA are "subject to valid existing rights." Together these provisions of FLPMA ensure that pre-FLPMA rights-of-way are protected and preserved.

This final rule therefore reflects long-standing law and BLM's historical practice by clarifying that 1866 Act rights-of-way are **not subject to** regulation so long as a right-of-way is being operated and maintained in accordance with the scope of the original rights granted. Because rights-of-way under the 1866 Act **are perpetual** and do not require renewal, no authorization under FLPMA exists or is required in the future. Therefore, unless a right-of-way holder undertakes activities that will result in a substantial deviation in the location of the ditch, a canal, or a substantial deviation in the authorized use, no opportunity exists for BLM to step in and regulate a right-of-way by imposing terms and conditions on the right-of-way's operation and maintenance. Simply stated, there is no current BLM authorization to which such terms and conditions could be attached. Therefore, Title V of FLPMA and BLM's right-of-way regulations **do not apply** to those rights-of-way." (emphasis added)

Plaintiff respectfully requests that the Court's attention be drawn to paragraphs 8 and 9 of plaintiff's First Amended Complaint which state, in pertinent part, as follows, "8...Mr. Smith (BLM's agent who decided to remove the plaintiff's diversion structure) was aware that the diversion structure **was created pursuant to the July 25, 1866 Mining Act when no permission to create such a diversion structure was required within the 100-foot right-of-way created by the act 9...On February 25,2000, Plaintiff, in written correspondence to Mr. Smith, reminded Mr. Smith that Plaintiff had reconstructed and maintained the dam in accordance with the patent and certificated water right and that Underwood Livestock, Inc was not required to seek authorization for work done on the diversion**

**structure from the Bureau of Land Management."** (emphasis added)

Substantial further proof that a taking did, in fact, occur lies in the BLM's filing for water from the same source. Attached, as Exhibit D, is a signed "Application for Permit to Appropriate the Public Waters of the State of Nevada." The application is signed by BLM Agent Jeffery Weeks for Gerald Smith and the application is for a point of diversion above the water source which is the subject of Certificate 1656. The application is dated February 5,2001, and is presently pending before the State Engineer for a decision.

## C. PLAINTIFF DOES HAVE A COMPENSABLE PROPERTY INTEREST IN CONSTRUCTING AND MAINTAINING A WATER DIVERSION STRUCTURE ON FEDERAL LAND

Having demonstrated that plaintiff clearly has a valid 1866 Act right-of-way which entitled it to construct the type of water diversion structure at issue here, plaintiff has proven that the removal of the diversion structure and the fencing of the water source which is the subject of Water Certificate 1656, has resulted in a compensable taking under US. v. General Motors Corporation, 323 U.S. 373, (1945). The Supreme Court of the United States defined the word "property' for the purpose of a takings claim, as denoting group rights in the citizen's relation to a physical thing, as the right to possess, use and dispose of it, and includes every sort of interest the citizen may possess in such thing except collateral interests incident to such relation (supra, p.377). The Court also stated that "taken" within the Fifth Amendment includes not only substitution of ownership but deprivation of ownership, including damage to, depreciation in value of, and destruction of property." Clearly, the plaintiff has demonstrated that it enjoyed a State Engineer-sanctioned water right and an 1866 Act right to a right-of-way and a diversion structure protected from interference and regulation by the government. With the diversion structure destroyed and the water source fenced for the past 5 years, plaintiff has not been able to earn the $300,000.00 referred to in plaintiffs complaint.

Another crucial piece of evidence which defendant fails to mention in either its own Motion for Summary Judgment or in its Opposition to Plaintiff's Motion for Summary Judgment is the Ruling #5050 of the Nevada State Engineer dated May 31,2001 (a date which,

by the way, precedes the December 14, 2001 finding of the IBLA extensively relied upon by defendant in its Motion for Summary Judgment). It should also be pointed out that the IBLA case cited by the defendant was between *Underwood Livestock, Inc*. and Don Bowman and the federal government, and not between *Dalton Wilson* and Don Bowman and the federal government. In any event, the State Engineer's ruling was the result of a Petition filed on behalf of the Bureau of Land Management on January 24, 2001. The petition was for a "Declaration of Forfeiture of a Water Right" challenging plaintiff's right to Certificate 1656 which is the subject of the within case. In their petition the BLM claimed that the water right needed to be forfeited due to a substantial "period of non-use..."

The State Engineer ruled, after reciting, in some great detail, the history of the permit and water certificate, that 'The Petition for Declaration of Forfeiture of Permit 4613, Certificate 1656 submitted on behalf of the Bureau of Land Management is hereby rejected on the grounds that the forfeiture of a water right permit that appropriates water from a surface source is exempt from forfeiture in accordance with NRS Section 533.060." This ruling was never challenged or appealed. The Court should be reminded that only the State of Nevada and not the IBLA can forfeit a state-given water right. Moreover, in Hage v, U.S., No. 91-1470L decided January 29, 2002, the Honorable Court of Federal Claims ruled that a 50-foot right-of-way exists on either side of a stream or water source. As the defendant is aware, there is an official memorandum from Jon Sherve to Steve Riefer, accompanied by a map, which shows that the point of diversion was clearly within the right-of~way of the water source in this case. *Hage*, supra, further upheld the rule that the state, not the federal government, has the right to grant a right-of-way for a diversion structure or a ditch or canal within 100 feet, even after 1976, based upon the 1866 Act.

The defendant complains that the only damages sought by the plaintiff are "business losses" which, defendant claims, "are not directly compensable in a Fifth Amendment takings case." (Defs. Opp. to Plt's. Mot. for Summ. Judg., p. 14). Defendant correctly acknowledges that Plaintiff's First Amended Complaint does state, ""The taking of which has prevented (plaintiff) from raising feed for the livestock or for the sale of feed to others has resulted in lost earnings of at least the sum of $300,000.00 and other such damage according to proof."

Apparently admitted by the defendant is the fact that the water source still has a fence around it, albeit "small" in its opinion and that there is no diversion structure in place which would provide a means to use the water. The fencing of the water source and removal of the diversion structure occurred nearly 5 years ago in September, 2001.

In support of their assertion that "Business losses such as these are not compensable" defendant cites 8 cases, (Defs. Opp. to Plt's. Mot. for Summ. Judg., p. 14 - 15.)

In U.S, v, General Motors, supra, which is one of those 8 cases, the Supreme Court noted that "In light of these principles it has been held that the compensation to be paid is the value of the interest taken. Only in the sense that he is to receive such value is it true that the owner must be put in as good position pecuniarily as if his property had not been taken. In the ordinary case, for want of better standard, market value is the criterion of that value."

In short, plaintiff is claiming that for the past five years it has not been able to utilize the water from the fenced water source to irrigate his patented 80 acres which therefore destroyed the actual fair market value of the 80 acres and that the fair market value of the water was of such a value that the actual loss of that water combined with the fair market value of the land easily exceeds $300,000.00.

It is submitted, by plaintiff, after considering footnote number 11 in Defendant's Opposition, that perhaps it is reasonable to seek the assistance of experts to determine the proper amount of just compensation if the Court determines that a hearing on damages is needed.

**CONCLUSION**

For all of the above reasons plaintiff is entitled to a Motion for Summary Judgment at least as to the issue of liability.

DATED this 15th day of June, 2006.

/s/ Martin Crowley

MARTIN CROWLEY
American Legal Services
85 South LaVerne Street
Fallon, Nevada 89406
(775) 423-7088
Attorney of Record for Plaintiff