IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., Plaintiff, | ) | No. 05-162 L |
| v. | ) | Judge Mary Ellen Coster Williams |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**AND RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

KATHLEEN L. DOSTER
HELENANNE LISTERMAN
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

Of Counsel
JAMES KARKUT
United States Department of the Interior
Office of the Regional Solicitor

## TABLE OF CONTENTS


I. INTRODUCTION . . . . . . . . . . 1

II. ARGUMENT

A. Plaintiff Did Not Have a Valid 1866 Act Right-of-Way that Entitled it to Build a New Water Diversion Structure on Federal Land . . . . . . . . . . 5

B. Even If Plaintiff Held a Valid 1866 Act Right-of-Way, Plaintiff Did Not Have a Right to Build a New Water Diversion Structure Without BLM Authorization . . . . . . . . . . 8

C. Plaintiff Does Not Have Standing to Sue for the Alleged Taking Because It Has Failed to Provide Evidence That it Held A Compensable Property Interest at the Time of the Alleged Taking . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Colvin Cattle Co., Inc. v. United States, 67 Fed. Cl. 568 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hage v. United States, 51 Fed. Cl. 570 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Lakewood Assocs. v. United States, 45 Fed. Cl. 320 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Gates of Mountain Lakeshore Homes, 732 F.2d 1411 (9th Cir. 1984) . . . . . . 10

## FEDERAL STATUTES

43 U.S.C. § 661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATE STATUTES

Nevada Revised Statutes § 534.090 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL REGULATIONS

43 C.F.R. Part 2800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

43 C.F.R. § 2801.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## OTHER AUTHORITIES

*Dalton Wilson, Don Bowman*, 156 IBLA 89 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## EXHIBIT LIST

Exhibit T - Plaintiff's Response to Defendant's First Set of Requests for Interrogatories, No. 7.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-162 L |
| | ) | |
| v. | ) | Judge Mary Ellen Coster Williams |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**AND RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFING**

## I. INTRODUCTION

On May 5, 2006, defendant, the United States of America, moved for summary judgment, arguing, in part, that plaintiff failed to allege a taking of a legally compensable property interest, specifically, a valid, pre-existing right-of-way across federal land pursuant to the Act of July 26, 1866 ("1866 Act").[1] On June 15, 2006, plaintiff opposed defendant's summary judgment motion, contending that it "clearly has a valid 1866 Act right-of-way which entitled it to construct the type of water diversion structure at issue here." Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at pp. 3-4. Prior to defendant filing its reply, the Court conducted a telephonic status conference with the parties. As a result of the status conference, the Court ordered plaintiff to file a supplemental brief addressing, inter alia, "standing, the precise date on

[1] On May 1, 2006, plaintiff also moved for summary judgment. (doc. no. 20.) Defendant filed its opposition to plaintiff's motion on June 1, 2006 (doc. no. 24), and plaintiff replied on June 15, 2006. (doc. no. 28).

which Underwood Livestock acquired the property at issue, and the pertinent regulations in effect in 2000," as well as whether the Interior Board of Land Appeals decision, Dalton Wilson, Don Bowman, 156 IBLA 89 (2001), is binding on this Court. (doc. no. 30). The Court also ordered defendant to file both its reply and its response to plaintiff's supplemental brief on August 15, 2006. (doc. no. 30.) Defendant's reply and response follow.

Neither plaintiff's opening brief nor supplemental brief pointedly address the summary judgment issues before this Court. As defendant explained in its opening brief, the IBLA has already found that plaintiff unequivocally did *not* have a valid 1866 Act right-of-way that entitled it to construct a new water diversion structure consisting of nineteen heavy equipment tires on federal land ("Wilson Water Diversion Structure"). Def.'s Mot. for Summ. J. at pp. 16-19; see also Dalton Wilson, Don Bowman, 156 IBLA 89 (2001) (Def.'s Ex. C). Accordingly, plaintiff is collaterally estopped from re-litigating this issue here. Tellingly, both in its response brief and supplemental brief, plaintiff does not dispute that the requirements for collateral estoppel of this issue have been met, but instead argues that the IBLA decision was wrongly decided. See Pl.'s Supp. Br. at p. 3 ("The plaintiff respectfully submits that the answer is that the IBLA decision is **not** binding on this Court for the simpl[e] reason that the decision was based on the mistaken fact that there was no right-of-way that accompanied the water right.") (emphasis in original). However, that is exactly the reason why courts have adopted the collateral estoppel doctrine – namely, to prevent plaintiffs from re-litigating the same issue in different courts in search of a more favorable outcome. Moreover, plaintiff had the opportunity to seek judicial review of this decision in district court, but chose not to do so.

Even if the Court were to find that the IBLA decision does not collaterally estop plaintiff from re-litigating the issue of whether it held a valid 1866 Act right-of-way, plaintiff's takings claim must still fail. As defendant explained in its opening brief, absent authorization from BLM, the scope of an 1866 Act right-of-way does not include the right to build a new, substantially different water diversion structure at a different location than what had been constructed at the time when the water right to which the right-of-way is appurtenant vested. Since it is undisputed that plaintiff never sought or received this authorization from BLM, plaintiff has failed to allege a taking of a legally compensable property interest, and plaintiff's takings claim must fail.

In response, plaintiff appears to rest on its repeated statements (without support) that it held a valid state-based water right and a valid 1866 Act right-of-way (despite the IBLA decision). However, even if one assumes that plaintiff held a valid 1866 Act right-of-way, it would still be necessary for the Court to define the scope of the right-of-way, and then determine whether plaintiff's actions exceeded the scope of that right-of-way. As we previously explained (see Def.'s Mot. for Summ. J. at pp. 20-26), even *if* plaintiff had a valid 1866 Act right-of-way, the scope of any such right-of-way would include only the right to *maintain* the right-of-way. Thus, the only remaining issue would be whether plaintiff's actions – hauling nineteen heavy equipment tires onto federal land, causing substantial surface disturbance, and constructing a new, substantially different water diversion structure at a different location than the original water diversion structure, without notifying or seeking authorization from BLM – qualify as maintenance of the right-of-way. Because it is evident that plaintiff was engaging in new

construction and not simply maintenance, and therefore exceeded the scope of any valid 1866 Act right-of-way, plaintiff's suggestion that it has a valid state-based water right and a valid 1866 Act right-of-way – even if correct – do not alter the conclusion that defendant's motion for summary judgment should be granted.

Finally, in its motion for summary judgment, defendant explained that plaintiff did not have standing to sue for the alleged taking in 2000 because plaintiff Underwood Livestock did not acquire any interest in the subject property until almost two years later, in 2002. Indeed, according to the documents provided to defendant during discovery, Dalton Wilson, and not plaintiff Underwood Livestock, Inc., leased fee property and water rights (purportedly with any accompanying valid, existing right-of-way) from Don Bowman at the time of the alleged taking. However, in its opposition brief, plaintiff submitted an "Addendum to Lease Agreement" to the Court, which vaguely states that Underwood Livestock "is hereby bound to the terms of said lease agreement."[2] See Pl.'s Ex. A. Plaintiff has failed to explain to the Court how this addendum bestows upon plaintiff a legally-recognized property interest compensable under the Fifth Amendment. Defendant notes that it is undisputed that Don Bowman, a non-party, owned the water right (and purported right-of-way) at issue in this case in 2000, when the alleged taking occurred. It is also undisputed that Dalton Wilson, not Underwood Livestock, entered into the lease agreement on May 20, 1994. Finally, it is undisputed for purposes of this summary judgment motion that Don Bowman and Dalton Wilson (not Underwood Livestock) orally

[2] Defendant must note that plaintiff failed to provide this document to defendant during the initial discovery period, even though defendant requested *all* documents pertaining to the lease and/or sale of the property at issue in this case. See Def.'s Ex. T at p. 13 (Pl.'s Resp. to Def.'s First Set of Reqs. for Interrogs. No. 7).

extended the lease past the two-year term. Since plaintiff's supplemental "evidence," discussed infra, does not change these facts, plaintiff Underwood Livestock has failed to meet its burden to show that it has standing to sue, and therefore, defendant's motion for summary judgment should be granted.

## II. ARGUMENT

### A. Plaintiff Did Not Have a Valid 1866 Act Right-of-Way that Entitled it to Build a New Water Diversion Structure on Federal Land

On December 14, 2001, the IBLA found no evidence that either Dalton Wilson or Don Bowman,

> [held] an R.S. 2339[3] right-of-way that supports the construction of the [Wilson Water Diversion Structure] . . . It is clear from the record that the only structures that have ever been erected for use incident to exercise of [Certificate 1656] were a spring box and pipeline. Thus it does not appear that appellants' predecessors-in-interest ever had an R.S. 2339 right-of-way that would have entitled them to maintain a water diversion/impoundment structure of the size or effectiveness at issue here.

Dalton Wilson, Don Bowman, 156 IBLA 89, 97 (2001) (footnote added) (Def.'s Ex. C). Since Mr. Wilson and Mr. Bowman failed to establish that they held a pre-existing right-of-way that would entitle them to build the Wilson Water Diversion Structure on BLM-managed lands, the IBLA "conclude[d] that BLM properly determined in its April 2000 Trespass Decision, under 43 C.F.R. § 2801.3, that the [Wilson] water diversion structure at issue here was constructed and is being maintained in trespass on the public lands. . . ." Id. Neither Mr. Wilson nor Mr. Bowman

[3] This is another name for Section 9 of the 1866 Act. R.S. 2339 refers to the Revised Statute section where it was once codified.

sought judicial review of the IBLA decision in the district court.[4]

As defendant argued in its opening brief, this Court does not have jurisdiction to review challenges to administrative decisions, such as the IBLA decision in this case. See Def.'s Mot. for Summ. J. at pp. 16-19. Moreover, plaintiff may not re-litigate the issue of whether it held a valid 1866 Act right-of-way that entitled it to build the Wilson Water Diversion Structure because the IBLA has already determined that plaintiff did not have this right. See id. The purpose of collateral estoppel is to "prevent the relitigation of a claim or issue that has already had its day in court." Lakewood Assocs. v. United States, 45 Fed. Cl. 320, 335 (1999).

Plaintiff does not dispute that the four elements necessary for collateral estoppel to attach have not been met in this case. Instead, plaintiff argues that the IBLA wrongly decided this issue because the Nevada State Engineer supposedly ruled, prior to the IBLA decision, that "a water right permit that appropriates water from a surface source is exempt from forfeiture in accordance with NRS Section 533.060." Pl.'s Opp'n at p. 5. Plaintiff has not provided this Court or defendant with a copy of this supposed ruling, which is referred to by plaintiff as "Ruling #5050." However, plaintiff's description of that document indicates that the State Engineer only stated that Certificate 1656 had not been forfeited; the "ruling" does not say anything with regards to the 1866 Act right-of-way plaintiff contends that it held. Since

---

[4] However, on September 26, 2000, Mr. Wilson and Mr. Bowman filed the lawsuit captioned Don Bowman & Dalton Wilson v. Bruce Babbitt, et al., CV-N-00-0506-HDM (D. Nev. filed Sept. 26, 2000), in which they alleged causes of action under the Mining Act of 1866, the Federal Land Policy and Management Act, the Declaratory Judgment Act, the Quiet Title Act, and the Fifth and Fourteenth Amendments of the U.S. Constitution. See Def. Ex. N. In essence, they alleged that they owned a right-of-way across public land that was free from BLM regulation. Id. On August 29, 2003, the court dismissed plaintiff's Quiet Title Act claim, and granted the United States' motion for summary judgment as to all other claims. Def. Ex. O.

defendant has assumed for purposes of this motion that plaintiff held a valid state-based water right at the time of the alleged taking, "Ruling #5050" is irrelevant with respect to plaintiff's contention that it held a valid 1866 Act right-of-way entitling it to engage in substantial new construction of the type at issue here.[5] Further, even if plaintiff's statements were correct, plaintiff nonetheless fails to explain how it would not be collaterally estopped from arguing that plaintiff has a valid "R.S. 2339 right-of-way that would have entitled them to maintain a water diversion/impoundment structure of the size or effectiveness at issue here." Def. Ex. C at p. 97.

In its response brief, plaintiff also relies on Hage v. United States, 51 Fed. Cl. 570 (2002), a decision neither binding on this Court nor final. Plaintiff contends that Hage, which was decided after the IBLA decision, held that a state-based water right includes an appurtenant 50-foot right-of-way "on either side of a stream or water source." Id. Although Hage is also irrelevant to the issue of collateral estoppel, defendant must point out that Hage does not hold that every state water right includes an appurtenant 50-foot right-of-way "on either side of a stream or water source." Instead, the court determined only that *if* a plaintiff could prove that it held a *valid* 1866 Act right-of-way, the parameters of the right-of-way included 50 feet on either side of the ditch right-of-way – not 50 feet on either side of a stream or water source, as plaintiff in the instant action contends. Id. at 580 ("In its Preliminary Opinion, the court found that the Hages were entitled to ditch rights-of-way equal to 50 feet on each side of the ditches or canals

---

[5] Moreover, plaintiff provides no legal support for its incorrect statement in its supplemental brief that "only the State Engineer may forfeit a water right *and the attendant right-of-way*." Pl.'s Suppl. Br. at p. 3 (emphasis added).

they own under Section 9 of the Act of July 26, 1866, 43 U.S.C. § 661.") (citation omitted).[6] Here, plaintiff does not have a valid 1866 Act right-of-way, and nothing in the Hage decision changes that fact.[7]

Because the IBLA has already considered and resolved the issue of whether plaintiff held a valid 1866 Act right-of-way, plaintiff is estopped from re-litigating this issue before the Court of Federal Claims, and defendant's motion for summary judgment should be granted.

### B. Even If Plaintiff Held a Valid 1866 Act Right-of-Way, Plaintiff Did Not Have a Right to Build a New Water Diversion Structure Without BLM Authorization

Plaintiff argues that a valid 1866 Act right-of-way includes the right to "*operate* and *maintain* the ditch, canal or conduit within the right-of-way," and the Federal Land Policy and Management Act ("FLPMA"), enacted in 1976, did not "terminate any *valid* lease, permit, patent, right-of-way, or other land use right or authorization existing at the time of FLPMA's enactment." Pl.'s Opp'n at p. 2 (emphasis added). Defendant agrees that plaintiff is permitted to operate and *maintain* a *valid* 1866 Act right-of-way. However, in its supplemental briefing, plaintiff argues that "no permission was required for plaintiff to *maintain* and *construct* a water

---

[6] But see Colvin Cattle Co., Inc. v. United States, 67 Fed. Cl. 568, 575 (2005), appeal docketed, No. 06-512 (Fed. Cir. Oct. 28, 2005) (criticizing Hage as "the only court to find a right to graze in connection with the Mining Act," and noting the "the Hage court explicitly concluded that the Mining Act 'does not address property rights in the public lands and the court declines to create such rights contrary to the clear legislative intention of Congress.'") (citations omitted).

[7] The Hage court also noted – contrary to plaintiff's arguments here – that valid 1866 Act rights-of-way are subject to regulation by the agency responsible for the federal land: "Under the 1866 Act, vested ditch rights-of-way are subject to Forest Service regulations, including the need to obtain special use permits when necessary." Hage, 51 Fed. Cl. at 584 (citing 43 U.S.C. § 1761(b)(3), Part 2800).

diversion structure on federal land. . ." Pl.'s Supp. Br. at p. 3 (emphasis added). Tellingly, plaintiff cites no support for its proposition that it was allowed to *construct* a new, substantially different, water diversion structure after FLPMA was enacted in 1976, without the permission of BLM. Indeed, plaintiff's discussion regarding 43 C.F.R. Part 2800 and the Federal Register citations reinforces defendant's position that plaintiff had a right to operate and maintain a valid 1866 Act right-of-way, but does not provide any support for plaintiff's statement that post-FLPMA, plaintiff had a right to engage in new construction without permission from BLM.

As a result, plaintiff has the burden to show that its unauthorized activities should be considered maintenance of the pre-1976 ditch right-of-way, and not new construction. Under the undisputed facts of this case, plaintiff clearly was not maintaining the right-of-way that supposedly existed prior to 1976 – and plaintiff has not argued to the contrary – because in 1998 only "scraps of old wood, which might be remnants of the spring box" existed. Def. Ex. C (156 IBLA at 98 n.12) (internal quotations and citations omitted). Instead, plaintiff created a new, substantially different water diversion structure, consisting not of a "spring box" but nineteen heavy equipment tires, in a location other than the pre-1976 right-of-way. Mr. Dalton admits that he used the heavy equipment tires and moved the location of the water diversion structure in order to create a new, improved water diversion structure. Def. Ex. A (Dalton Wilson Deposition ("Wilson Dep.") at pp. 80-81, 92); see Def.'s Mot. for Summ. J. at pp. 20-26.

As the Tenth Circuit in Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735 (10th Cir. 2005), explained in discussing the scope of a right-of-way

under Section 8 of the 1866 Act (otherwise known as R.S. 2477)[8]:

> Defined in terms of the nature of the work, 'construction' . . . includes the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other draining structures, as well as any significant change in the surface composition of the road (*e.g.*, going from dirt to gravel, from gravel to chipseal, from chipseal to asphalt, etc.), or any 'improvement,' 'betterment,' or any other change in the nature of the road that may significantly impact Park lands, resources, or values. 'Maintenance' preserves the existing road, including the physical upkeep or repair of wear or damage whether from natural or other causes, maintaining the shape of the road permits drainage [, and] keeping drainage features open and operable – essentially preserving the status quo.

Id. at 748-49 (citations omitted).

As applied to this case, the preceding quotation underscores that plaintiff's actions in installing the Wilson Walter Diversion Structure did not maintain the status quo and, instead, constituted new construction. Further, the type of new construction at issue here unquestionably required plaintiff to consult with BLM and receive authorization, which plaintiff chose not to obtain. See id.; see also 43 C.F.R. Part 2800.[9] Moreover, plaintiff's citation to a few pieces of extraneous evidence – i.e., the March 1, 1924 Patent, the February 25, 2000 letter from Mr.

---

[8] Cases concerning the scope of grants under R.S. 2477 are "especially strong authority on the scope of" grants under R.S. 2339. United States v. Gates of Mountain Lakeshore Homes, 732 F.2d 1411, 1413 n. 4 (9th Cir. 1984).

[9] In its opposition brief, plaintiff contends that defendant does not "refer to 43 CFR 2800" in its motion for summary judgment or in its opposition to plaintiff's motion for summary judgment. Pl.'s Opp'n at pp. 2-3. This is surprising since defendant refers to 43 C.F.R. Part 2800 and/or its subparts on numerous pages of its briefs. See Def.'s Mot. for Summ. J. at 4, 9, 10, 23, and 25; Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 6, 10, 11, 12, and 13.

Wilson, and the August 13, 1999 memorandum – does not change this result.

First, plaintiff contends that Patent Number 932407 granted its predecessors "the right to any vested and accrued water rights and rights to ditches and reservoirs used in connection with such water rights." Pl.'s Opp'n at p. 3. However, the explicit terms of the patent clearly state that the patent holder takes the land "*subject to* any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of courts; and there is reserved from the lands hereby granted a right of way thereon for ditches or canals constructed by the authority of the United States. . . ." Pl.'s Ex. C; Def.'s Ex. J (emphasis added). Under the express terms of the patent, the patent did not grant to plaintiff or its predecessors any 1866 Act rights-of-way.

Second, plaintiff's reliance on Dalton Wilson's February 25, 2000 letter to BLM is misplaced. In that letter, Mr. Wilson, in his capacity as president of Underwood Livestock, merely stated his inaccurate view that the March 1, 1924 patent "granted to my predecessor all appurtenances, including water rights and right to ditches and reservoirs in connection with such water rights. I am clearly not required to make any application to the BLM or any other federal agency to exercise these rights granted this corporation by President Coolidge in 1924." Pl.'s Ex. G. Mr. Wilson's erroneous interpretation of the language in the patent does not demonstrate that plaintiff is entitled to, or was properly granted, a right-of-way. Moreover, the letter does not substantiate plaintiff's position that a right-of-way application was unnecessary. This letter only represents Mr. Wilson's opinion of the significance of certain documents and how certain events

unfolded. Contrary to plaintiff's assertions, the letter represents nothing more.

Third, the August 13, 1999 privileged memorandum from an attorney at the Department of the Interior to the Battle Mountain Field Office Manager at BLM, merely states that until a forfeiture action is brought under Nevada Revised Statutes § 534.090, a water right certificate is "at least prima facie evidence of a valid water right." Pl.'s Ex. K at p. 1. As defendant has previously noted, we have assumed for purposes of this motion that plaintiff held a valid state-based water right, and therefore, this memorandum does nothing to support plaintiff's claims here. Instead, the memorandum clearly contradicts all of the arguments plaintiff makes regarding whether it held a valid 1866 Act right-of-way and whether the scope of the right-of-way included the type of new construction at issue here. Id. at pp. 1-4. As the memorandum explains, a water right certificate does not authorize the construction or "re-construction" of any water diversion facilities. Id. at pp. 1-2. If any such authorization exists, it would be pursuant to Section 9 of the 1866 Act (R.S. 2339). Id. The memorandum goes on to state that plaintiff provided no evidence that a valid 1866 Act right-of-way existed in 1976 and that even if a valid right-of-way existed it would be "limited to the original alignment and scope as it existed in 1976. . . ." Id. at p. 2.

In sum, plaintiff has provided no evidence to suggest that its construction activities on BLM-managed lands were merely maintaining a valid 1866 Act right-of-way. Because Mr. Dalton's activities exceeded the scope of any 1866 Act right-of-way plaintiff may have held, plaintiff has failed to allege a taking of a legally compensable property interest, and defendant's motion for summary judgment should be granted.

**C. Plaintiff Does Not Have Standing to Sue for the Alleged Taking Because It Has Failed to Provide Evidence That it Held A Compensable Property Interest at the Time of the Alleged Taking**

As defendant argued in its motion for summary judgment, plaintiff Underwood Livestock has the burden to demonstrate that it is the "party to invoke judicial resolution of the dispute." See Def.'s Mot. for Summ. J. at 12. In order to meet its burden, plaintiff must show that it is the owner of the property right at issue at the time of the alleged taking. Id. at 12-14. Here, there is no dispute for purposes of this summary judgment motion that Don Bowman was the owner of the water right and alleged right-of-way at issue in this case at the time of the alleged taking. The parties also do not dispute that Dalton Wilson "an unmarried man, of Lander and Eureka Counties, Nevada," entered into a lease agreement on May 20, 1994 with Don Bowman "a married man dealing in his sole and separate property. . ." See Pl.'s Ex. A.

Plaintiff in response points to a lease "addendum," as well as a few ancillary documents, in an attempt to prove that Underwood Livestock held a compensable property interest at the time of the alleged taking. However, plaintiff points to no authority to support the contention that this "addendum" creates a compensable property interest. Pl.'s Supp. Br. at p. 1. Indeed, in plaintiff's opposition brief, plaintiff appears to provide this documentation to prove that "plaintiff in this case, Underwood Livestock, Inc., was preparing to purchase the property along with the appurtenant water and grazing rights." Pl.'s Resp. to Def.'s Opp'n at p. 2. However, an "intent" to purchase does not create a compensable property interest.

Plaintiff's additional pieces of "evidence" are similarly flawed since none demonstrate that plaintiff Underwood Livestock held a compensable property interest at the time of the

alleged taking. For example, plaintiff contends that "additional security beyond the lease price and option to purchase price was pledged [by Mr. Wilson] to solidly secure an interest in the property." Id. The fact that Mr. Wilson pledged additional security does not bestow upon Underwood Livestock a compensable property interest.

Second, plaintiff cites to the IBLA decision. The IBLA decision explicitly states that Don Bowman leased the parcels of land at issue in the trespass case to "Wilson and/or Underwood Livestock, Inc." Def.'s Ex. C (156 IBLA at 90) (emphasis added). Nowhere in the opinion does the IBLA determine what type of property interest, if any, Underwood Livestock, Inc. had on the date of any alleged taking.

Third, plaintiff relies on a letter dated February 25, 2000 from Mr. Wilson, in his capacity as president of Underwood Livestock, Inc., to Gerald M. Smith, Bureau of Land Management. However, as discussed in this brief, supra p. 11, the February 25, 2000 letter only establishes Mr. Wilson's view of certain events involving BLM, and nothing more.

Finally, plaintiff cursorily states that "the Trespass Decision itself mailed on April 10, 2000, from BLM is addressed to Dalton Wilson, President, Underwood Livestock." Pl.'s Suppl. Br. at p. 2. All the trespass decision establishes is that BLM determined that Mr. Wilson and Mr. Bowman trespassed on federal lands, and does not establish what type of property interest, if any, Underwood Livestock had in the water right and alleged right-of-way at issue in this case.

Since plaintiff has failed to meet its burden to prove standing in this case, defendant's motion for summary judgment should be granted.

## CONCLUSION

For reasons set forth above and in defendant's opening brief, defendant respectfully requests the Court to grant its motion for summary judgment.

Dated: August 15 , 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

/s/ Kathleen L. Doster
KATHLEEN L. DOSTER
HELENANNE LISTERMAN
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0481 (phone)
(202) 305-0506 (fax)
Kathleen.Doster@usdoj.gov

Of Counsel:
JAMES KARKUT
United States Department of the Interior
Office of the Regional Solicitor