Ex. A

# United States Department of the Interior

RECEIVED MAIL ROOM
1999 AUG 16 P 2:52
BUREAU OF LAND MANAGEMENT BATTLE MOUNTAIN DISTRICT

OFFICE OF THE SOLICITOR
Suite 6201, Federal Building
125 South State Street
Salt Lake City, Utah 84138

1849-1999

PROTECTED FROM DISCLOSURE: ATTORNEY-CLIENT COMMUNICATION, ATTORNEY WORK PRODUCT

August 13, 1999

Memorandum

To: Gerald M. Smith, Field Manager, Battle Mountain Field Office, Bureau of Land Management

From: John Steiger, Attorney-Advisor

Subject: Simpson Park WSA Incursion Issues

By memorandum dated April 23, 1999, you asked this office to address a number of questions arising from Mr. Dalton Wilson's construction of a water diversion structure on public lands in the Simpson Park Wilderness Study Area (WSA). This memorandum memorializes our recent teleconference call in which I provided you with our views. Below is a summary of our responses to the questions as presented in the April 23 memorandum.

1. "Is Application 4613 a valid existing right because it is recognized as a valid water right in good standing by the State Engineer?"

The document to which you refer, "Application 4613," is a State of Nevada water right certificate for a 1917 appropriation. The certificate number, as assigned by the Nevada State Engineer, is 1656. This certificate is at least prima facie evidence of a valid water right. See Town of Eureka v. State Engineer, 826 P.2d 948, 951 (Nev. 1992) (stating that a "vested water right" arises "through a state permit" and "'is regarded and protected as real property'" (citation omitted)). If the water right has not been used for five consecutive years, it may be challenged through a forfeiture action pursuant to section 534.090 of the Nevada Revised Statutes (see response to question No. 7 below). However, until the successful prosecution of such an action, the BLM should consider the water right valid.

2. "Are there any construction or re-construction authorizations associated with Application 4613?"

Generally, as a matter of state water law, a water right certificate does not authorize the construction or re-construction of any facilities. See 1 W. Hutchins, Water Rights Laws in the Nineteen Western States 444 (1971) ("The water right . . . is entirely distinct from the property right in the works . . . and each may exist without the other."); see also id. 599. If

the certificate holder wishes to change his point-of-diversion from that indicated on the certificate or to modify the diversion works to divert a greater quantity of water than indicated he must apply to the State Engineer before commencing construction. To the extent that construction can be deemed maintenance or improvement not affecting the point or quantity of diversion, the water right holder probably does not need the approval of the State Engineer.

We understand that Mr. Wilson is relying on water right certificate No. 1656 to support a claim to a right-of-way (ROW) under R.S. 2339, originally enacted as section 9 of the 1866 Mining Act (codified as amended at 43 U.S.C. § 661). As an initial matter, it is important to emphasize that the state water right itself does not authorize any type of construction or re-construction; if such an "authorization" exists, it would be pursuant to the alleged R.S. 2339 ROW.

Mr. Wilson may have a R.S. 2339 ROW, but it appears that he has not provided sufficient evidence for the BLM to conclude that such a right exists or to determine its scope. The Department's position, based on ample case law, is that a R.S. 2339 ROW may be recognized only if the claimant demonstrates that the means of conveyance had been constructed and was operational when R.S. 2339 was repealed by FLPMA in 1976 (or the subject lands were withdrawn, whichever occurred first). See, e.g., Bear Lake & River Water Works & Irrig. Co. v. Garland, 164 U.S. 1, 18-19 (1896); United States v. McIntire, 101 F.2d 650, 654 (9th Cir. 1939); United States v. Utah Light & Ry. Co., 242 F. 742, 744 (D. Utah 1914); Sydner v. Colorado Gold Dredging Co., 181 F. 62, 66 (8th Cir. 1910); United States v. Rickey Land & Cattle Co., 164 F. 496, 499-500 (C.C.N.D. Cal. 1908); Mannix v. Powell Co., 243 P. 568, 569 (Mont. 1926); Verde Water & Power Co. v. Salt River Valley Water Users Ass'n, 197 P. 227, 229 (Ariz. 1921); Crane Falls Power & Irr. Co. v. Snake River Irr. Co., 133 P. 655, 660-63 (Id. 1913).

Based on the information you provided to us, the only evidence of the purported right, besides the water right certificate, are scraps of old wood in the vicinity of the point of diversion that may be the remnants of a spring box. Apparently, there is no evidence of any ditches, canals, or other diversion/conveyance structures as of 1976. We believe that this is an insufficient basis on which to conclude that a R.S. 2339 right exists.

We note that, as a general matter, even if a R.S. 2339 right exists, it would be limited to the original alignment and scope as it existed in 1976 (or when the lands were withdrawn). See, e.g., Sydner, 181 F. at 70; Hage v. United States, 35 Fed. Cl. 147, 161 (1996), citing Union Mill & Mining Co. v. Dangberg, 81 F. 73 (C.C.D. Nev. 1897); Hansen v. Galiger, 208 P.2d 1049, 1054 (Mont. 1949); White Bros. & Crum Co. v. Watson, 117 P. 497, 498-99 (Wash. 1911); Kreiger v. Pacific Gas & Electric Co., 119 Cal. App. 3d 137, 143 (1981). A R.S. 2339 ROW extends only to "maintenance and use of the ditch, substantially as then constructed, for the purpose of diverting and carrying the volume of water theretofore appropriated, and did not give any right to enlarge the ditch, or to change its location, or to use it in diverting and carrying a largely increased volume of water." Sydner, 181 F. at 70. Applying this rule, courts have held that lining an earthen ditch with gunite exceeded the scope, Kreiger, 119 Cal. App. 3d at 143-45, and converting a

ditch to a pipeline exceeds the scope, White Bros. & Crum Co., 117 P. at 479; Oliver v. Agasse, 64 P. 401 (Cal. 1901).

In addition, we note that the Department takes the position that it may regulate the exercise of a R.S. 2339 ROW so long as such regulation does not unreasonably interfere with enjoyment of the ROW. The Department's position is premised on its role as the underlying land owner and its authority to regulate private property interests on public lands pursuant to the Federal Land Policy and Management Act of 1976 (43 U.S.C. §§ 1701 et seq.) (FLPMA). Cf. Adams v United States, 3 F.3d 1254, 1258 n.1 (9th Cir. 1993) (stating that a R.S. 2477 ROW is subject to reasonable Forest Service regulations), citing United States v. Vogler, 859 F.2d 638, 642 (9th Cir. 1988), cert. denied, 488 U.S. 1006 (1987).

In sum, Mr. Wilson, in our opinion, has not demonstrated that he has unilateral authority to construct the diversion structure and pipeline associated with water right certificate No. 1656.

3. "What is the appropriate mechanism to authorize the diversion structure and pipeline, and how much authority does BLM have in deciding where and how these structures should be built?"

In light of the foregoing, the appropriate mechanism for approving these facilities is that provided for obtaining a right-of-way permit under Title V of FLPMA and its implementing regulations. The BLM would need to assure that any permit issued is consistent with the Interim Management Policy for Land Under Wilderness Review. The BLM would have the same authority in approving, denying, or conditioning the permit as it has in considering any Title V application within a WSA.

4. "Should the water be diverted by means of a small earth and rock dam, and conveyed to the land to be irrigated by means of ditches and laterals as described in Application 4613, or can different construction techniques be used?"

Again, in light of the foregoing, this is a question best answered through the FLPMA Title V process. The means of diversion and conveyance indicated in water right certificate No. 1656 does not bind the BLM. If the BLM's needs conflict with those means, the burden is on the water right holder to obtain the State Engineer's approval of the facilities the BLM is willing to authorize, if necessary (see the response to question No. 1).

5. "If FLPMA rights-of-way are required to construct the diversion structures and pipeline, is the existing rubber-tire dam a FLPMA trespass?"

Based on the information provided to this office, we believe that a trespass notice is justified.

6. "The description of land to be irrigated in Application 4613 includes 80 acres of public land. How should this issue be addressed?"

The water right certificate itself cannot be read to give the holder the right to irrigate public land. To the extent that the certificate evidences a R.S. 2339 ROW, the Supreme Court has said that R.S. 2339 recognizes not only a ROW for ditches and canals, but protects the right to use water for mining and agricultural purposes on public land. Jennison v. Kirk, 98 U.S. 453, 456-57, 460-61 (1876). However, we know of no case where it has been held that R.S. 2339 provides a right to use public lands, i.e., to irrigate certain acreage.[1] In any event, as discussed above, we do not think that Mr. Wilson has made the threshold showing that he has a R.S. 2339 ROW.

7. "Should the BLM request forfeiture of Application 4613 and file to appropriate the water now associated with Application 4613?"

At this point, we see no immediate need to request the State Engineer to find the subject water right forfeited. Should Mr. Wilson provide additional information sufficient to make a colorable R.S. 2339 claim, this alternative might be warranted. Forfeiture of the water right most likely would result in relinquishment of the alleged R.S. 2339 ROW. However, be aware that the Nevada Supreme Court has held that a forfeited right can be "cured" by resuming substantial use of the right before a forfeiture proceeding has begun. Town of Eureka, 826 P.2d at 952. Mr. Wilson's recent construction of the diversion structure may be sufficient to defeat a forfeiture action.

With respect to filing to appropriate the water now associated with certificate No. 1656, we do not understand what the BLM would hope to achieve in undertaking such action. If the BLM needs the water for a beneficial use, it should file to appropriate it.

---

[1] The court of claims in Hage v. United States, 42 Fed. Cl. 249, 250 (1998), preliminarily ruled that a R.S. 2339 ROW for grazing purposes supports a limited forage right, but this is not a final decision and is contrary to well-established case law. For example, the Tenth Circuit in Diamond Bar Cattle Co. v. United States, 168 F.3d 1209 (10th Cir. 1999), found that this theory "is contrary not only to the language of [R.S. 2339] itself, which simply recognizes the use of water, but also to the well-settled body of law holding no private right exists to graze public lands." Id. at 1215. The court stated that R.S. 2339 "cannot fairly be read to recognize private property rights in federal lands, regardless whether proffered as a distinct right or as an inseparable component of a water right," and that "[v]irtually every attempt" to persuade a court to do so "has been soundly rejected." Id. See also, e.g., Hunter v. United States, 388 F.2d 148, 153-54 (9th Cir. 1967) (rejecting the argument that a water right for grazing cattle includes an appurtenant right to forage in the vicinity of the water); Clearly v. Skiffich, 65 P. 59, 62-63 (Colo. 1901) (holding that, under the 1866 Mining Act, an owner of a vested water right for purposes of mill operation had the right to use water and a ditch to divert the water, but did not have the right to the land on which the mill was situated); Thomas Ormachea, et al., 73 I.D. 339, 346 (1966) (recognizing and applying the Department's earlier holding that state "water rights do not vest in the holder thereof any right to graze livestock in the areas serviced by his waters where land is the base for granting privileges"), following M.P. Depaoli and Sons, I.G.D 552 (1951), and William Sellas, I.G.D. 677 (1958).

The Field Solicitor has reviewed and concurs in the conclusions of this memorandum. If you have any questions, please call me at 801-524-5677 ext. 233.

John Steiger
Attorney-Advisor

cc: Deputy State Director, Natural Resources, Lands & Planning

Ex. B

**IN THE OFFICE OF THE STATE ENGINEER**
**OF THE STATE OF NEVADA**

| | | |
|---|---|---|
| IN THE MATTER OF THE POSSIBLE FORFEITURE OF PERMIT 4613, CERTIFICATE 1656 FILED TO APPROPRIATE THE SURFACE WATERS OF UNDERWOOD CANYON WITHIN THE GRASS VALLEY HYDROGRAPHIC BASIN (138), LANDER COUNTY, NEVADA. | ) | **RULING** **#5030** |

**GENERAL**

**I.**

Application 4613 was filed on October 1, 1917, by Thomas Brackney to appropriate 5.0 cubic feet per second of water from Underwood Canyon. The proposed manner and place of use was described as being for irrigation, stock watering and domestic purposes within 160 acres of land located within the S½ NW¼ and the N½ SW¼ of Section 12, T.22N., R.47E., M.D.B.&M. The proposed point of diversion was described as being located within the SW¼ NE¼ of said Section 12. Application 4613 was permitted by the State Engineer on February 25,1919, with Certificate 1656 issued for irrigation and domestic purposes under Permit 4613 on June 17, 1930.[1]

**FINDINGS OF FACT**

**I.**

The State Engineer maintains a formal permitting process that allows a permitted water right to be perfected in accordance with the provisions of NRS chapter 533.[2] The submittal of the Proof of Beneficial Use under Permit 4613 on March 8, 1927, documented the degree in which the water right granted under Permit 4613 had been placed to its intended beneficial use.

---

[1] File Number 4613, official records in the office of the State Engineer.
[2] NRS § 533.425.

The information derived from this proof formed the basis from which Certificate 1656 was issued.[1] The State Engineer finds that Permit 4613 represents a certificated water right.

II.

Permit 4613, Certificate 1656 was issued to appropriate the waters of a surface source located within Underwood Canyon.[1] The State Engineer finds that Permit 4613 also represents a certificated water right permit, which appropriates water from a surface source.[1]

III.

A Petition for a Declaration of Forfeiture of a Water Right filed on behalf of the United States Bureau of Land Management, Battle Mountain Field Office ("BLM"), was received in the office of the State Engineer on January 24, 2001. This petition requested the State Engineer to declare the water right issued under Permit 4613, Certificate 1656 forfeited as a matter of law. The BLM's claim of forfeiture is based upon a period of non-use that is alleged to have occurred from 1986 through 1994. It is the BLM's contention that this period of non-use predates the 1999 amendment to NRS § 533.060, which exempted the forfeiture of surface water rights. Also contained within the BLM's forfeiture petition was the argument that five successive years of non-use had occurred prior to the 1999 amendments; therefore, the water right granted under Permit 4613, Certificate 1656 had already been forfeited and subsequently ceased to exist prior to 1999.[1] The State Engineer finds that no declaration of forfeiture had been issued by the State Engineer prior to the 1999 legislative change applicable to forfeiture of surface waters.

## IV.

Certificate 1656, was issued to appropriate surface water for irrigation, and domestic purposes. It is the duty of the State Engineer to regulate this appropriation of water in accordance with the provisions found within the Nevada Revised Statutes chapter 533. The records of the office of the State Engineer currently contain in excess of 66,000 water right files, with surface water filings representing a large percentage of the filings submitted prior to the Second World War. Many of the applications that requested new appropriations of surface water or changes in existing surface water rights have been denied or cancelled in addition to a smaller number of permits that have been deemed abandoned by the State Engineer. A more specific accounting of these inactive surface water rights indicates that 3,084 surface water applications have been denied, 6,281 permits have been cancelled and the State Engineer has ruled 11 surface right permits abandoned.[3] Two surface water sources have been declared relinquished, abandoned and forfeited by the State Engineer, but these water rights were not forfeited due to the statutory non-use provision found under NRS § 533.060, but rather the water rights were relinquished to the control of the State of Nevada.[4] The State Engineer finds that until the 9th Circuit Court of Appeals decided in the Alpine cases[5] that the forfeiture law was applicable to surface water rights, during the 98 years that the office of the State Engineer has been in operation, no water right that derives its appropriation of water from a surface source had ever been forfeited due to statutory non-use of the water.

[3] Nevada Division of Water Resources water rights data base, April 5, 2001.
[4] File Nos. 9936 and 9937, official records in the office of the State Engineer.
[5] U.S. v. Alpine Land and Reservoir Co., 983 F.2d 1487 (9th Cir. 1992).

V.

The office of the State Engineer was created during the legislative session of 1903 to enable the state of Nevada to form a centralized agency that would regulate and protect the state's limited water resources. During the 98 years that have passed since its inception, the office of the State Engineer has recognized a clear distinction between the manner in which surface and underground water rights can be lost due to non-use. Prior to 1999, Nevada Revised Statute § 533.060, stated that if the owners of any ditch, canal, reservoir, or any other means of diverting any of the public water failed to use the water therefrom for beneficial purposes for which the right of use exists during any five successive years, the right to so use shall be deemed as having been abandoned and any such owner thereupon forfeited all water rights, easements and privileges appurtenant thereto acquired. Although this language may be interpreted to describe a means by which a surface water right may be subjected to a forfeiture determination, the State Engineer has never applied this statute to surface water rights until the Alpine Court's decision in 1992.[3] During the 1999 Nevada State Legislative session, it was proposed that new language be developed to make this provision more consistent with the State Engineer's long history of limiting forfeiture to underground water rights. This effort culminated in the 1999 amendments to NRS § 533.060, which exempted surface water rights from forfeiture determinations. The State Engineer finds that the changes made in NRS § 533.060 during the 1999 legislative session were enacted to clarify the language found within the forfeiture statute to a point where it more accurately reflected the State Engineer's well established policy of exempting surface water rights from forfeiture.

**CONCLUSIONS**

**I.**

The State Engineer has jurisdiction over the parties and the subject matter of this action and determination.[6]

**II.**

A permitted water right that appropriates water from a surface source is not subject to the forfeiture under the provisions found within the current version of the Nevada Revised Statutes § 533.060. The State Engineer concludes, since no declaration of forfeiture was made by the State Engineer prior to the 1999 legislative amendment, a declaration of forfeiture is not proper now.

**RULING**

The Petition for Declaration of Forfeiture of Permit 4613, Certificate 1656 submitted on behalf of the Bureau of Land Management is hereby rejected on the grounds that the forfeiture of a water right permit that appropriates water from a surface source is exempt from forfeiture in accordance with NRS § 533.060.

Respectfully submitted,

Hugh Ricci, P.E.

HUGH RICCI, P.E.
State Engineer

HR/MDB/dl

Dated this 31st day of May, 2001.

[6] NRS chapter 533.

RECEIVED
D.C.M.R.
OFFICE OF THE DIRECTOR
2001 JAN 24 AM 10: 12

BEFORE THE NEVADA STATE ENGINEER

PETITION FOR A DECLARATION OF FORFEITURE
OF A WATER RIGHT

The undersigned, as counsel for and on behalf of the United States Bureau of Land Management, Battle Mountain Field Office (BLM), hereby petitions the State Engineer for a declaration that Nevada Water Right Permit No. 4613, Certificate 1656, with a priority date of October 1, 1917, and now owned by Mr. Don Bowman, be declared forfeited as a matter of law. The Nevada Attorney General's Office has informed us that this is the appropriate vehicle to seek such a declaration under Nevada law.

The reasons for seeking the declaration are as follows:

1. In the mid-1980s, a Mr. Wilson filed an application for a Title V right-of-way under the Federal Land Policy and Management Act of 1976 for the installation of a new pipeline in Underwood Canyon to take water from a point higher in the canyon past the original point of diversion and out of the canyon down to the private land now owned by Mr. Bowman. Within that same time frame, Mr. Wilson also filed a change of water use in connection with that application, but neither was completed. Official BLM file records of inspection dated in 1986 and made in connection with the processing of the Title V application describe the old Underwood Canyon pipeline as inoperable and in severe disrepair as of that date, and further describe the condition of the pipeline as appearing to have been in that condition for a considerable period prior to that date, "at least ten years" earlier. A copy of the relevant file notations are enclosed as Exhibit 1.

2. Current inspections by the BLM have validated and confirmed its 1986 inspection and demonstrate that the pipeline is in severe disrepair, is rusted and corroded, broken, and generally inoperable.. The level of disrepair makes it apparent that the situation observed in 1986 was only allowed to further deteriorate and that the water has not been beneficially used under Certificate No. 1656 since at least 1986, and probably for a considerable period prior to that date. See enclosed videotape dated January 3, 2001, Exhibit 2.

3. For many years prior to at least 1995, Nevada law specified that a water right was to be deemed abandoned and therefore forfeited as a matter of law upon a showing of five successive years of non-use.[1] Nevada Revised Statutes §533.060. At a minimum, the BLM records document at least eight consecutive years of non-use – from 1986 through 1994 – before Nevada Revised Statutes 533.060 was amended in 1995 to require the State Engineer to supply the water right holder with notice after four years before the fifth year of non-use could result in a declaration of forfeiture. This period of non-use also predates the 1999 amendments to §533.060 which declared surface water rights not to be subject to forfeiture. Given the presumption of prospective application of Nevada law in the absence of clearly contrary legislative intent, which is not present here, Town of Eureka

[1] NRS § 533.060.2 previously read (1998 ed.) in relevant part, "[I]f the owner or owners of any such ditch, canal, reservoir, or any other means of diverting any of the public water fail to use the water therefrom or thereby for beneficial purposes for which the right of use exists during any 5 successive years, the right to so use shall be deemed as having been abandoned, and any such owner or owners thereupon forfeit all water rights, easements and privileges appurtenant thereto theretofore acquired, . . ."

v. State Engineer, 108 Nev. 163 (1992); Nevada Power Co. v. Metropolitan Dev. Co., 104 Nev. 684, 686, 765 P.2d 1162, 1163 (1988), we can only conclude that the 1995 and 1999 amendments apply only prospectively, i.e. to water rights (both surface and ground water) where part of the period of non-use would occur after the date of passage of the respective amendment, and that where the statutory period of five years of non-use was satisfied before either of those amendments was passed, the water right has ceased to exist as a matter of law and now lacks only a declaration confirming the forfeiture. Town of Eureka, supra.

4. The water otherwise covered by this water right has also not been put back to beneficial use, "substantially" or at all, and has therefore not been "cured" within the contemplation of the Nevada Supreme Court in Town of Eureka. The BLM is aware that Town of Eureka technically applies only to ground water rights, but given the favorable references in the decision to Idaho and Wyoming law, and given the fact that the earlier forfeiture language of § 533.060 clearly applied to surface water rights as well as ground water rights, we assume that the court would have treated surface water rights analogously.

5. The BLM's interest in this matter is in clearing title to its lands within and in the vicinity of Underwood Canyon of any continuing claim to a right-of-way for the pipeline under Revised Statutes § 2339, 43 U.S.C. § 661, to facilitate the management and administration of the public lands for which it is responsible. The above-quoted language of the 1998 edition of the NRS § 533.060 specified that if a water right were forfeited, so were all appurtenant easements and similar privileges.

Conclusion

The BLM requests a declaration from State Engineer that the non-use of the water covered by Certificate No. 1656 during the full years 1987 (actually beginning in 1986) through at least 1994 resulted in a full legal and uncured forfeiture of that water right. The BLM's request therefore does not depend on any period during which a notice requirement was in effect or after the forfeiture provisions of Nevada law no longer applied to surface water rights.

Please copy both of the following addresses with copies of related correspondence, and thank you for your attention to this matter.

Respectfully submitted this 18th day of January, 2001.

JOHN W. STEIGER
Field Solicitor

by

A. Scott Loveless
Attorney - Advisor
Office of the Field Solicitor
125 South State St., #6201
Salt Lake City, UT 84138
(801) 524-5677 ext. 225

United States Bureau of Land Management
Battle Mountain Field Office
Attn: Gail Givens
50 Bastian Road
Battle Mountain, NV 89820

cc: Paul Taggart
Nevada Attorney General's Office

Ex. C

UNDERWOOD LIVESTOCK, INC.
P.O. Box 74, Austin, Nevada 89210

November 5, 1996

Department of Interior
Bureau of Land Management
Nevada State Office
850 Harvard Way, P.O. Box 12000
Reno, NV 89520-0006

Attn.: Ann Morgan, Nevada State Director

Re: Freedom of Information Act (FOIA) Request

Dear Ms. Morgan:

As the Bureau of Land Management is aware, I claim, and have documented, what I believe to be pre-existing rights to the use of livestock forage on land adjoining certain springs in the Simpson Park Range, Eureka and Lander counties, State of Nevada, utilized by Underwood Livestock, Inc., pursuant to the laws of the State of Nevada and so shown on the records of Lander County with copy to the Nevada State Water Engineer. Those rights have been traced to my predecessors in interest, antedating the enactment of the Taylor Grazing Act of 1934, the Federal Land Policy and Management Act of 1976, and the multitude of regulations enacted by Department of Interior agencies in reliance on those acts.

Pursuant to the Freedom of Information Act, I hereby submit the following requests for information on behalf of Underwood Livestock, Inc., a Nevada corporation, Dalton Wilson, president, and Dalton Wilson as an individual:

**1) One copy of each written Bureau or Department regulation, policy, guide, directive or other document which in any way authorizes or did authorize Bureau or Department personnel to determine existence, status or use of pre-existing rights;**

**2) A summary of any unwritten directive or advice which in any way authorizes or did authorize Bureau or Department personnel to determine existence, status or use of pre-existing rights;**

3) One copy of any written or unwritten instruction,

**directive or advice which directs or did direct Bureau or Department personnel to look to state and/or local law, custom or practice to determine existence, status or use of pre-existing rights.**

If no such written or unwritten regulations, policies. guides, directives or other instructions exist or did exist, please so inform me in writing.

Please respond to this request within the time frame set forth in the Freedom of Information Act.

An informational copy of this letter is being sent to the Battle Mountain District Manager.

Sincerely,

**UNDERWOOD LIVESTOCK, INC.**

By ______________________________
Dalton Wilson, President

cc: Battle Mountain BLM District Manager
Eureka County Public Lands Advisory Committee

Ex. D

United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Nevada State Office
P. O. Box 12000
Reno, Nevada 89520-0006

IN REPLY REFER TO:
NV-96-68
1278 (NV-930)

NOV 22 1996

Mr. Dalton Wilson
P.O. Box 74
Austin, Nevada 89210

Dear Mr. Wilson:

In response to your Freedom of Information Act Request, dated November 5, 1996, the following information is provided:

Regarding your specific requests for information related to the first numbered paragraph, no such regulation, policy, guide, directive or other document exists that, "authorizes or did authorize Bureau or Department personnel to determine existence, status or use of pre-existing rights."

Regarding your second numbered paragraph, no such document or summary exists that, "authorizes or did authorize Bureau or Department personnel to determine existence, status or use of pre-existing rights."

Regarding your third numbered paragraph, no such document exists that, "directs or did direct Bureau or Department personnel to look to state and/or local law, custom or practice to determine existence, status or use of pre-existing rights."

Under 43 CFR section 2.18, you have the right to appeal this response of your FOIA request by writing to:

Freedom of Information Act Appeals Officer
Office of the Assistant Secretary for Policy,
Management and Budget
U.S. Department of the Interior
1849 C. Street, N.W., Room 5026 - MIB
Washington, D.C. 20240

Your appeal must be received within 20 working days (Saturdays, Sundays, and public legal holidays excepted) from the date that you receive this letter. To expedite a response, your appeal should include a copy of our original request and a copy of this response, and write "Freedom of Information Act Appeal" both on the envelope and on the body of your appeal letter. In order to expedite the appellate process and insure full consideration of your appeal, your letter should also contain a brief statement of the reasons why you feel this response is in error.

Sincerely,

Jean Rivers-Council
Associate State Director, Nevada

cc: District Manager, Battle Mountain

Ex. E

# D E E D

THIS DEED is made on the 1st day of February, 1990, by DALTON WILSON, an unmarried man, hereinafter referred to as "Grantor", and UNDERWOOD LIVESTOCK, INC., a Nevada Corporation, hereinafter referred to as "Grantee".

W I T N E S S E T H:

That Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration, the receipt of which is hereby acknowledged by Grantor from Grantee, does by these presents GRANT, BARGAIN, SELL, RELEASE, ASSIGN AND TRANSFER unto Grantee all of his right, title and interest in and to those certain water permits or applications pertaining to UNDERWOOD GRAZING UNIT WATER BASE situate in the Counties of Lander and/or Eureka, State of Nevada, which water permits and applications are more particularly referred to as follows:

Water Permits and Applications:

1. Certificate of Appropriation, Application No. 9058, Certificate Record No. 2049, Book 7, Page 2049, pertaining to waters appurtenant to and/or works of diversion in the E 1/2 NW 1/4, Section 30, Township 22 North, Range 48 East, MDB&M,

2. Certificate of Appropriation, Application No. 7893, Certificate Record No. 1655, Book 6, Page 1655, pertaining to waters appurtenant to the NE 1/4 SW 1/4, Section 12, Township 22 North, Range 47 East, MDB&M.

3. Certificate of Appropriation, Application No. 8892, Certificate Record No. 2057, Book 7, Page 2057, pertaining to waters appurtenant to and/or work of diversion in the NE 1/4 NE 1/4, Section 21, Township 22 North, Range 48 East, MDB&M.

4. Certificate of Appropriation, Application No. 4613,



JAMES F. SLOAN
Attorney at Law
565 West Williams Ave
Fallon, Nevada 89406

Certificate Record No. 1656, Book 6, Page 1656, pertaining to waters appurtenant to the NE 1/4 SW 1/4, SE 1/4 NW 1/4 and SW 1/4 NW 1/4, Section 12, Township 22 North, Range 47 East, MDB&M.

5. Certificate of Appropriation, Application No. 4758, certificate Record No. 1657, Book 6, Page 1657, pertaining to waters appurtenant to the NW 1/4 SW 1/4 and SW 1/4 NW 1/4, Section 12, Township 22 North, Range 47 East, MDB&M.

6. Certificate of Appropriation, Application No. 7424, Certificate Record No. 1299, Book 5, Page 1299, pertaining to waters appurtenant to and/or works of diversion on Sections 11 and 12, Township 21 North, Range 47 East, MDB&M.

TOGETHER with all water, water rights and other rights or privileges in connection with the use or diversion of water growing out of, incident to or held in connection with said Certificates of Appropriation, and each of them.

TO HAVE AND TO HOLD all and singular the premises together with appurtenances, unto Grantee, its successors and assigns.

IN WITNESS WHEREOF, Grantor has hereunto set his hand on the day and year first above written.

GRANTOR:

Dalton Wilson

DALTON WILSON

STATE OF NEVADA )
: ss.
County of Churchill )

On 1st day February, 1990, personally appeared before me, a notary public, DALTON WILSON, personally known (or proved) to me to be the person whose name is subscribed to the



JAMES F. SLOAN
Attorney at Law
West Williams Ave.
Fallon, Nevada

BK 342 PG 055

above instrument who acknowledged that he executed the instrument.

SHARON M. BRANDT
Notary Public - State of Nevada
Appointment Recorded in Churchill County
MY APPOINTMENT EXPIRES JULY 1, 1992

Sharon M. Brandt
NOTARY PUBLIC

CERTIFIED COPY
THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE RECORD IN THE OFFICE OF COUNTY RECORDER, LANDER COUNTY, NEVADA.
WITNESS MY HAND AND SEAL THIS 22ND DAY OF April, 2005
IDONNA M. TREVINO, COUNTY RECORDER

163382

OFFICIAL RECORDS
LANDER COUNTY
RECORDED AT REQUEST OF Dalton Wilson
90 FEB -2

RAYE ... RECORDER
FEE 7.00 ... SP



JAMES F. SLOAN
Attorney at Law
959 West Williams Ave.
Fallon, Nevada 89406