IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNDERWOOD LIVESTOCK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-162 L |
| | ) | |
| v. | ) | Judge Mary Ellen Coster Williams |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S SUPPLEMENTAL PLEADINGS FOLLOWING TELEPHONIC ORAL ARGUMENT ON AUGUST 29, 2006**

## I. INTRODUCTION

On August 29, 2006, the Court heard oral argument on the parties' cross-motions for summary judgment. The Court ordered plaintiff to file "supplemental evidence and briefing on the issues the Court raised during oral argument," by September 22, 2006, and for defendant to file its reply by October 13, 2006. Doc. No. 35. Accordingly, in this Memorandum, defendant addresses only the issues raised in plaintiff's supplemental briefing and respectfully refers the Court to defendant's previous briefs filed in support of its motion for summary judgment and in opposition to plaintiff's motion for summary judgment for a more complete discussion of the issues in dispute in this case.

## II. ARGUMENT

### A. Plaintiff Underwood Livestock, Inc. Does Not Have Standing to Sue For the Alleged Taking

Plaintiff contends that "[t]he government asserts Underwood Livestock, Inc., because it was a mere lessee at the time of the willful destruction of the water structure, does not have

standing to sue in this Honorable Court of Federal Claims." Pl.'s Supp. Brief at 1. Tellingly, plaintiff does not provide any citation to any page in any of the three briefs previously filed by the government in which the United States made such an argument. Moreover, during the August 29, 2006, telephonic oral argument, counsel for defendant specifically stated that the United States did not dispute that a lessee can seek compensation for the value of the lease interest allegedly taken by the government. See Aug. 29, 2006 Tr. at 28; see Lemmons v. United States, 496 F.2d 864, 873 (Ct. Cl. 1974) ("It is established that a leasehold interest is property, the taking of which entitles the leaseholder to just compensation for the value thereof.").

However, the government has consistently stated that the plaintiff in this case, Underwood Livestock, Inc., is not the lessee to the May 20, 1994 lease agreement. See Def. Ex. K. Instead, as is clearly stated on the face of the May 20, 1994 lease agreement, the lease agreement was between "DON BOWMAN, a married man dealing in his sole and separate property. . ." and "DALTON WILSON, an unmarried man, of Lander and Eureka Counties, Nevada . . .".[1/] Id.

In response to the government's motion for summary judgment, plaintiff cursorily argued that a document titled "Addendum to Lease Agreement," is sufficient to establish the corporation's standing to sue in this case. See Pl.'s Ex. A (Pl.'s Opp'n to Def.'s Mot. Summ. J.). The "Addendum," signed by "UNDERWOOD LIVESTOCK, DALTON WILSON, President," simply "declares that UNDERWOOD LIVESTOCK, a Nevada corporation, is hereby bound to

---

[1/] Moreover, the quitclaim deed and promissory note attached to Donald Bowman's declaration as plaintiff's exhibits B and C, also clearly state that the documents were entered into between Donald Bowman and "DALTON WILSON, an unmarried man."

the terms of [the May 20, 1994] lease agreement."[2/] The Court, during the telephonic oral argument, requested that plaintiff provide support for its position that the Addendum is sufficient to provide standing to Underwood Livestock, Inc.[3/] See Aug. 29, 2006 Tr. at 29-40. Since plaintiff has failed to provide any legal support for its statements regarding the legal effect of the "addendum," it has failed to meet its burden to prove that it is the proper "party to invoke judicial resolution of the dispute," and defendant's motion for summary judgment should be granted. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990); see also United States v. Dow, 357 U.S. 17, 20 (1958); Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1215 (Fed. Cir. 2005).

**B. Plaintiff is Estopped From Re-Litigating the Issue of Whether it Held a Valid 1866 Act Right-of-Way that Entitled it to Build a New Water Diversion Structure on Federal Land**

The Federal Circuit has specifically held that collateral estoppel applies if:

> (i) the issue previously adjudicated is identical with that now presented, (ii) that issue was "actually litigated" in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented in the prior action.

Kroeger v. US. Postal Serv., 865 F.2d 235, 239 (Fed. Cir. 1988) (quoting Thomas v. Gen. Servs. Admin., 794 F.2d 661, 664 (Fed. Cir. 1986); accord Mother's Restaurant, Inc. v. Mama's Pizza,

---

[2/] It should be noted that the Lessor to the May 20, 1994 lease, Donald Bowman, did not sign the Addendum.

[3/] Mr. Bowman states that after June 1, 1995, Underwood Livestock, Inc. paid all payments due to Mr. Bowman under the terms and conditions of the May 20, 1994 lease. Bowman Decl. ¶ 6. Neither Mr. Bowman, nor plaintiff, provides any documentation to support such a statement. Moreover, plaintiff does not provide any discussion regarding the legal significance of such alleged payments.

Inc., 723 F.2d 1566, 1569 (Fed. Cir. 1983); see also Klump v. United States, 38 Fed. Cl. 243, 247-48 (1997) (finding that issues resolved by IBLA estopped plaintiff from re-litigating those issues before the Court of Federal Claims). Nowhere in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, or Plaintiff's Supplemental Response to Defendant's Motion for Summary Judgment, did plaintiff ever dispute that these four criteria have been met in this case. Instead, plaintiff repeatedly argued, as it does again in its second supplemental briefing, that the IBLA was wrong when it held:

> Appellants have made no effort to show that they hold an R.S. 2339 right-of-way that supports the construction of the water impoundment here. Nor do we find evidence in the record so showing. It is clear from the record that the only structures that had ever been erected for use incident to exercise of appellants' successor-in-interest's water rights were a spring box and pipeline. Thus, it does not appear that appellants' predecessors-in-interest ever had an R.S. 2339 right-of-way that would have entitled them to maintain a water diversion/impoundment structure of the size or effectiveness at issue here.

Def. Ex. C (156 IBLA at 97).

Plaintiff's demand that the Court second-guess the IBLA decision is unavailing, since it is black letter law that this Court does not have jurisdiction to review administrative decisions. Aulston v. United States, 823 F.2d 510, 513 (Fed. Cir. 1987) ("Although judicial review of the IBLA determination is not precluded, Congress has vested review in the district courts, not in the Claims Court."); Hafen v. United States, 30 Fed. Cl. 470, 474 (1994) ("[T]he IBLA decision exhausts plaintiff's remedies and constitutes a final agency decision.").

Nevertheless, even if the Court were to entertain plaintiff's demand, none of the "evidence" that plaintiff discusses in its supplemental brief provides any basis to challenge the

IBLA's previously quoted findings. For example, plaintiff directs the Court's attention to the August 13, 1999 privileged memorandum from an attorney at the Department of the Interior to the Battle Mountain Field Office Manager at BLM. The memorandum advises BLM that until there is a successful prosecution of a forfeiture action brought under Nevada Revised Statutes § 534.090, "the BLM should consider the water right valid." Pl.'s Ex. A. However, that legal advice was limited to the water right and clearly distinguished between the water right and the alleged R.S. 2339 right-of-way:

> We understand that Mr. Wilson is relying on water right certificate No. 1656 to support a claim to a right-of-way (ROW) under R.S. 2339, originally enacted as section 9 of the 1866 Mining Act (codified as amended at 43 U.S.C. § 661). *As an initial matter, it is important to emphasize that the state water right itself does not authorize any type of construction or re-construction; if such "authorization" exists, it would be pursuant to the alleged R.S. 2339 ROW.*
> . . .
>
> Based on the information you provided to us, the only evidence of the purported right, besides the water right certificate, are scraps of old wood in the vicinity of the point of diversion that may be the remnants of a spring box. Apparently, there is no evidence of any ditches, canals, or other diversion/conveyance structures as of 1976. We believe that this is an insufficient basis on which to conclude that a R.S. 2339 right exists.

Pl. Ex. A (emphasis added). This legal distinction between state-based water rights and R.S. 2339 rights-of-way has been completely ignored by plaintiff. In fact, plaintiff has based its arguments in this case (as well as in the IBLA case) on the faulty assumption that if it had a valid state-based water right at the time of the alleged taking, it automatically included the right to use federally-owned lands. Plaintiff cites no support for its proposition (because there is none) and, consequently, its proposition should be disregarded. See Utah Power & Light Co. v. United States, 243 U.S. 389, 410-11 (1917); Snyder v. Colorado Gold Dredging Co., 181 F. 62, 69 (8th

Cir. 1910); Def. Ex. C (156 IBLA at 94).

As a result, plaintiff's focus on extraneous evidence to support the fact that Mr. Bowman purportedly held a valid state-based water right at the time of the alleged taking is a red herring. Indeed, the IBLA assumed that Mr. Bowman held a state-based water right when it determined that Mr. Bowman and Mr. Wilson trespassed on federal lands when Mr. Wilson built the new water diversion structure at issue in this case in 1998. See Def. Ex. C (156 IBLA at 97) ("In the present case, we accept the fact that Bowman's predecessors-in-interest held a vested State water right . . .".). Therefore, any additional "evidence" supporting the fact that Mr. Bowman held a valid state-based water right would not change the IBLA's decision. Moreover, the IBLA clearly recognized (as the Court should do here) that the appellants were confused regarding the legal significance of holding a state-based water right:

> Underlying appellants' appeals from BLM's April 2000 Trespass Decision is a fundamental misconception regarding the nature and extent of their water rights under State law, which concern only the proper use and dispensation of the water to which they are entitled. Such rights do not include any automatic right to use Federally-owned lands for the construction and maintenance of a structure, even where it is utilized in connection with those water rights.

Def. Ex. C (156 IBLA at 94).

Similarly, the denial of BLM's Petition for Declaration of Forfeiture of Permit 4613, Certificate 1656, by the Office of the State Engineer of the State of Nevada, does not help plaintiff avoid collateral estoppel, since it does not address whether plaintiff held a valid right-of-way over federal land. Moreover, it is the BLM, not the State Engineer, which must protect the public lands against trespass. See 43 C.F.R. § 2808.10-11 (2005).

1. The Government Has Established that the Four Criteria for Collateral

Estoppel to Apply Have Been Satisfied

On April 10, 2000, the BLM issued a final decision that the water diversion structure at issue in this case was constructed and maintained by Mr. Wilson in trespass on federal lands. Mr. Wilson and Mr. Bowman appealed BLM's final decision to the IBLA where they argued – as they do here – that they were not required to obtain authorization from BLM to construct the water diversion structure since they held a R.S. 2339 right-of-way. In order to determine whether Mr. Wilson and Mr. Bowman had committed trespass, the IBLA necessarily had to determine whether they held an existing R.S. 2339 right-of-way that entitled them to construct the water diversion structure at issue in this case. As previously mentioned, the IBLA found that neither Mr. Wilson nor Mr. Bowman met their burden of demonstrating that they held a valid R.S. 2339 right-of-way that encompassed constructing the new diversion dam, and therefore, the water diversion structure was constructed in trespass on federal land. Def. Ex. C (156 IBLA at 98-99).

Therefore, it is clear that the question of whether Mr. Wilson and Mr. Bowman held a valid R.S. 2339 right-of-way that entitled them to build the water diversion structure at issue in this case, has been (1) previously determined; (2) actually litigated; and (3) was necessary to the end-decision made by the IBLA finding Mr. Wilson and Mr. Bowman liable for trespass on federal lands, satisfying three of the four criteria for collateral estoppel to apply. See Kroeger, 865 F.2d at 239. The fourth criteria – "the party precluded was fully represented in the prior action" – which was belatedly challenged by plaintiff during oral argument, is also satisfied here. Id.

In order for the fourth criterion to be satisfied, it is not necessary for the party precluded

to have been a party to the prior action. Instead, the key question is whether the party precluded was fully represented in the prior action, or stated another way, the previous litigation involved the "same parties or their privies." Zoeller v. United States, 65 Fed. Cl. 449, 456 (2005); see also Southwest Airlines Co. v. Tex. Int'l Airlines, Inc., 546 F.2d 84, 94-95 (5th Cir. 1977) ("Recognizing the importance of these [res judicata] policies, federal courts have repeatedly held that judgments can bind persons not party to the litigation in question.") (citations omitted).

Here, there is no question that Dalton Wilson's (as well as Donald Bowman's) interests were fully aligned with Underwood Livestock, Inc. Dalton Wilson is the owner, president, sole shareholder, and sole employee of Underwood Livestock, Inc. See Amend. Compl. at 1; Def. Ex. A (Dalton Wilson Deposition at pp. 13-14). This type of relationship has been held to be sufficient for collateral estoppel to apply. See Pacetti v. United States, 50 Fed. Cl. 239, 246 (2001) (finding collateral estoppel applied since plaintiff's interests were fully represented in previous litigation by his corporation, where plaintiff was the president and sole shareholder); Kreager v. Gen. Elec. Co., 497 F.2d 468, 471 (2d Cir. 1974) (finding that sole shareholder of corporation was bound by the dismissal of prior action brought in the name of his corporation). See generally Southwest Airlines, 546 F.2d at 95 (federal courts will determine whether "the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion."). Id. at 95.

Plaintiff attempts to support its assertion that Dalton Wilson did not fully represent Underwood Livestock, Inc. in the IBLA action with an argument plaintiff claims was made in defendant's Motion to Dismiss filed earlier in this case. Plaintiff contends that the government "clearly established" that "Mr. Wilson could not legally represent Underwood Livestock, Inc," in

its Motion to Dismiss. Pl. Supp. Br. at 4. However, what the United States clearly established was that Mr. Wilson could not represent his corporation *pro se* in the Court of Federal Claims because it was prohibited by RCFC 83.1(c)(8) (an individual may only "represent oneself or a member of one's immediate family as a party before the court" and a "corporation may only be represented by counsel" who is admitted to practice in the Court of Federal Claims.). This has no bearing on whether Mr. Wilson and Underwood Livestock, Inc. have sufficient privity in order for collateral estoppel to apply.

In sum, because the IBLA has already considered and determined that Mr. Wilson failed to demonstrate that he held a valid 1866 Act right-of-way that entitled him to construct the water diversion structure at issue in this case, plaintiff is estopped from re-litigating this issue before the Court of Federal Claims, and defendant's motion for summary judgment should be granted.

**CONCLUSION**

For reasons set forth above and in defendant's prior briefs in support of its motion for summary judgment, defendant respectfully requests the Court to grant its motion for summary judgment.

Dated: October 13 , 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

/s/ Kathleen L. Doster
KATHLEEN L. DOSTER
HELENANNE LISTERMAN
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0481 (phone)
(202) 305-0506 (fax)
Kathleen.Doster@usdoj.gov

Of Counsel:
JAMES KARKUT
United States Department of the Interior
Office of the Regional Solicitor