IN THE UNITED STATES COURT OF FEDERAL CLAIMS

UNDERWOOD LIVESTOCK, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

No. 05-162 L

Judge Mary Ellen Coster Williams

**PLAINTIFF'S STATUS REPORT**

COMES NOW, the plaintiff, through its attorney, and submits the instant Status Report pursuant to this Court's Order of September 18, 2007 (see DKT #46) as to whether Mr. Wilson or Mr. Bowman has sought or plan to seek judicial review of the IBLA decision *Dalton Wilson, Don Bowman 156 IBLS 89 (2001)*. This Report is based upon all the papers and pleadings on file herein and the following points and authorities.

The first point of discussion should of course be whether Wilson or Bowman has sought or plan to seek judicial review. It would appear that neither Bowman or Wilson sought Judicial Review and that such is not necessary.

Bowman and Wilson were both predecessors in interest to that certificated water right known as Certificate No. 1656. That water right was first transferred to Wilson through a lease agreement from Bowman, and then later said lease was assumed by plaintiff Underwood Livestock, Inc. (ULI), of which Wilson is its sole officer. See also, Exhibits to DKT #38, p. 24-26. Although the IBLA acknowledges ULI may be the leaseholder, it fails entirely to determine the issue and also to determine if ULI is an indispensable party. 156 IBLA at 90. Therefore, a

critical issue is ignored by the IBLA. If the wrong parties were cited for the alleged trespass, then appropriate jurisdiction is lacking and the decision is void and no review or appeal would be needed. Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A.; U.S.C.A. Const. Amend. 5 – Klugh v. U.S., 620 F.Supp. 892 (D.S.C. 1985); A void judgment is one which, from its inception, is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind the parties or to support a right, of no legal force and effect whatever, and incapable of enforcement in any manner or to any degree – Loyd v. Director, Dept. of Public Safety, 480 So. 2d 577 (Ala. Civ. App. 1985); Void judgment is one entered by court without jurisdiction of parties or subject matter or that lacks inherent power to make or enter particular order involved; such judgment may be attacked at any time, either directly or collaterally People v. Sales, 551 N.E.2d 1359 (Ill.App. 2 Dist. 1990); Judgments entered where court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside, Jaffe and Asher v. Van Brunt, S.D.N.Y.1994. 158 F.R.D. 278.

The BLM knew it was dealing with ULI by virtue of the correspondence from it to the plaintiff. Mr. Wilson stated that "I have not built a water diversion structure in my own name in Underwood Canyon." March 27 , 2000 Wilson letter to Gail Givens, BLM, attached as Exhibit 1. Even though the BLM thereafter issued a "Trespass Decision" addressed to Mr. Dalton Wilson, President Underwood Livestock, it continued to refer to Mr. Wilson in the "second person" as proceedings against "you" (versus against your company or words to that effect). See Gail Givens, BLM, letter of April 10, 2000, attached as Exhibit 1.

Stated differently, the BLM cited Bowman and Wilson for a trespass that was not their personal act. The BLM pursued the individuals instead of the corporation to intimidate them with threats of criminal prosecution, since the corporation cannot be jailed.

The IBLA decision makes findings that are not supported by evidence and are also "ultra vires" as to the matter. 156 IBLA 90 (Finding that there is "no right-of-way" authorizing the diversion structure). Such is plainly in directed contravention of the certificate issued by the Nevada State Engineer in 1930 and confirmed by the NSE in 2001. See attached copies of applications and certificates by and to Brackney from 1917 to 1930 from the State Engineer's

Office. (Exhibit 1 hereto). The IBLA has no authority whatsoever to determine if a state water right exists or whether said water right also includes a right of way. The IBLA also incorrectly assumed that the Federal Land Policy and Management Act of 1976 (FLPMA) superseded the certificated water right No. 1656. IBLA @ 93. Therein the Administrative Judge held that "It is well established that any person who desires, on or after October 21, 1976, to use, occupy or develop the public lands for the purposes of impounding, storing, transporting, or distributing water is required to obtain a right-of-way or other authorization pursuant to Title V of FLPMA...." Such is specifically and is no uncertain terms denied by the regulations promulgated by the Secretary of the Interior. Federal Register Vol. 70, No. 77, at 20979-80 states in relevant part:

Section 2801.6 Scope

This section explains what these final regulations apply to and what the final regulations do not apply to. In this final rule we combined proposed sections 2801.7 and 2801.8 into this section. We also amended this section by adding new paragraphs (b)(5), (6), and (7).

We added new paragraph (b)(5) to alleviate the concerns of some commenters that this rule would have a negative effect on rights under R.S. 2477.

**We added new paragraph (b)(6) to clarify that the right-of-way regulations do not apply to existing rights for private reservoirs, ditches, and canals established prior to FLPMA under the Mining Act of July 26, 1866. We think this clarification will be helpful in eliminating any confusion associated with the previous regulatory language found in former section 2801.4.**

**In the 1866 Act, Congress granted Federal protection for vested *state law-based water rights and rights-of-way for ditches, canals and other structures necessary for the use of water*. Under the Act, a private party could acquire a right-of-way across Federal lands without any action by the government--no application or filing with the government was necessary, and no governmental approval was required. The right-of-way vested once a ditch or canal was constructed and a water right acquired. Once the right-of-way was created, it existed in perpetuity and included the right to operate and maintain the ditch, canal or conduit within the right-of-way**. See, e.g., Utah Power & Light v. United States, 243 U.S. 389, 405 (1917); Gorrie v. Weiser Irr. Dist., 153 P. 561, 562 (Id. 1915); Perry v. Reynolds, 122 P.2d 508, 511 (Id. 1942); United States v. Big Horn Land & Cattle Co., 17 F.2d 357, 366 (8th Cir. 1927).

Other statutes enacted after the 1866 Act also allowed private parties to acquire rights-of-way across Federal lands. Unlike 1866 Act rights-of-way, however, these other statutes required government action before rights-of-way vested. For example, the Act of March 3, 1891

required an applicant to file and get government approval of a map before the right-of-way vested. The 1891 Act differed from the 1866 Act in several other ways, too. Unlike the 1866 Act, the 1891 Act defined the physical extent of the right-of-way. In addition, the 1891 Act allowed for establishment of rights-of-way for irrigation purposes on reserved lands; the 1866 Act did not apply to reserved lands.

When FLPMA was enacted in 1976, it repealed the existing laws governing rights-of-way and replaced them with a single mechanism for establishing a right-of-way over the public lands. Section 501(a) of FLPMA provides the Secretary of the Interior with authority to ``grant, issue, or renew rights-of-way over, upon, under, or through'' the

[[Page 20980]]

public lands. 43 U.S.C. 1761. In addition, FLPMA provides the Secretary with authority to impose terms and conditions on these rights-of-way that, among other things, ``minimize damage to scenic and esthetic values and fish and wildlife habitat and otherwise protect the environment.'' Section 505(a); 43 U.S.C. 1765.

**But FLPMA did not terminate rights-of-way established under the prior statutes. Instead, FLPMA expressly preserved and protected such pre-existing private rights-of-way. Section 701(a) of FLPMA provides that FLPMA does not terminate ``any valid lease, permit, patent, right-of-way, or other land use right or authorization'' existing at the time of FLPMA's enactment.** 43 U.S.C. 1701, note 1. In addition, section 701(h) of FLPMA provides that all actions taken by the Secretary in the exercise of her authority under FLPMA are ``subject to valid existing rights.'' 43 U.S.C. 1701, note 1. Together, these provisions of FLPMA ensure that pre-FLPMA rights-of-way are protected and preserved.

**This final rule therefore reflects long-standing law and BLM's historical practice by clarifying that 1866 Act rights-of-way are not subject to regulation so long as a right-of-way is being operated and maintained in accordance with the scope of the original rights granted. Because rights-of-way under the 1866 Act are perpetual and do not require renewal, no authorization under FLPMA exists or is required in the future. Therefore, unless a right-of-way holder undertakes activities that will result in a substantial deviation in the location of the ditch or canal, or a substantial deviation in the authorized use, no opportunity exists for BLM to step in and regulate a right-of-way by imposing terms and conditions on the right-of-way's operation and maintenance. Simply stated, there is no current BLM authorization to which such terms and conditions could be attached. Therefore, Title V of FLPMA and BLM's right-of-way regulations do not apply to these rights-of-way.**
(Emphasis added).

Besides being outside its jurisdiction, the IBLA was flatly wrong. The government would argue that Bowman and Wilson would have had to file a request for judicial review or other appeal of the IBLA. However, the defendant fails to demonstrate the authority that such argument is based upon. Further, the IBLA itself ignores the prior Petition to the NSE and the NSE denial of that decision on May 31, 2001. The IBLA incorrectly states that the "only

structures that had ever been erected for use incident to exercise of appellants' successor-in interest's water rights were a spring box and pipeline." Such is clearly belied by the application and certificates given to Thomas Brackney which included a "small earth and rock dam," "ditches and laterals," "Earth dam and ditch" and "pipeline and ditches." See Exhibit 2 attached.

The BLM sought a forfeiture of the No. 1656 water right through the Nevada State Engineer (NSE) on or around January 24, 2001. See Exhibits to DKT #38, p. 13-16. That Petition was denied by a decision of the NSE on May 31, 2001. Id. p. 8-12. The BLM never sought a judicial review of that decision therefore cementing the fact that the certificate no. 1656 was and is a valid surface water right. Id. Thomas Brackney was the applicant and did receive the certificate No. 1656. It is undisputed that Brackney was a predecessor-in-interest to Mr. Bowman. The Declaration of Don Bowman previously filed herein demonstrated that plaintiff Underwood Livestock acquired its rights through Mr. Wilson and therefore is the holder of the water rights at issue. Dkt. #37 pp 1-2.

Hence, the government would have this tribunal accept the IBLA decision as a type of "res judicata" or "collateral estoppel" because no judicial review or appeal was sought. However, the IBLA decision was clearly "ultra vires" in that the NSE is the only legally authorized entity that can determine state-law based water rights. The government's position should fail based on their own arguments. Since the BLM sought a determination in 2001 that the water right was forfeited and that Petition was rejected and no appeal was taken, such is "res judicata" in this matter. Moreover, the NSE decision of May 31, 2001 declared itself to have jurisdiction over the subject matter and the parties by virtue of NRS Chapter 533. DKT #38 Exhibit p. 12. The IBLA decision, noticeably, does not include its own statement of jurisdiction over this subject matter.

Also remarkable is the fact that the IBLA does not even purport to know when the trespass is to have occurred. 156 IBLA 90. "The record does not demonstrate exactly when the water diversion structure was constructed. However, it is undisputed that construction was recent, having first been noted by BLM in its August 26, 1998, letter to Wilson...." Id. The IBLA further creates facts out of "thin air" when it thereafter states: "There is no doubt that the

water diversion structure was constructed by Wilson, on behalf of Bowman....” Id. There is nothing to support that statement whatsoever.

Given the fact that the IBLA Decision purports to affirm a trespass notice against Bowman and Wilson individually and the evidence in this case clearly shows that they did not personally operate, control or maintain the water right in Underwood Canyon when the diversion structure was supposed to have been constructed, the IBLA Decision is a nullity in it’s entirety.

It is submitted that the Plaintiff can here proceed without filing a collateral attack on the void IBLA decision against Bowman and Wilson. If there is legal cause as to why the plaintiff cannot proceed in this action, without the IBLA Decision being first set aside, then an independent action will have to be pursued. However, before this conclusion is reached, the Court should note how the plaintiff here will be able to pursue a legal remedy on behalf of Don Bowman who is not a party nor interested here and has no legal nexus to the plaintiff and the plaintiff has no authority to seek to vacate the decision on Bowman’s behalf.

Dated this Oct 30, 2007

Respectfully submitted,

/s/ Martin Crowley, Esq.
MARTIN CROWLEY
American Legal Services
85 South LaVerne Street
Fallon, Nevada 89406
(775) 423-7088

Counsel for Plaintiff

Delivery to counsel through the Court’s ECF filing system.